(Decided June 28th, 1860.)

# AARON LEVERING *vs.* MARY E. LEVERING.

Under the Act of 1841, ch. 262, and its supplements, a divorce *a vinculo,* on account of abandonment of the party complaining by the party complained against, cannot be decreed, unless the court is satisfied, by competent testimony, that such abandonment has continued for at least three years, and is deliberate and final, and the separation of the parties beyond any reasonable expectation of reconciliation.

If the husband fails to supply his wife with such necessaries and comforts of life as are within his reach, and by cruelty compels her to quit him, and seek shelter and protection elsewhere, it is as much an abandonment of her by him, as if he deserts her and goes away himself.

In this case, the evidence did not sustain the charge that the husband failed or was unwilling to support his wife or share with her the fruits of his earnings, but there was proof that, on one occasion, forgetful of his duty, or impelled by the madness of intoxication, he inflicted violence on her person. For this and other ill-treatment, the wife left him and went to her father's house, where she lived for three years, apart from her husband, but the proof shows that the latter earnestly and anxiously sought to have her restored to him and to renew their marital relations. HELD:

Levering *vs.* Levering.

1st. That this is not a case for a divorce *a vinculo*, but there being evidence of such cruelty as justified the wife in leaving the society of her husband, it is a proper case for a divorce *a mensa et thoro*.

2nd. There being but one child, a daughter of tender years, the court, under the power given by the 3rd sec. of the Act of 1841, ch. 262, confided her to the custody and guardianship of the *mother*, there being no proof or intimation of any unfitness or want of qualification on her part to take proper care of the child.

APPEAL from the Equity side of the Superior Court of Baltimore city.

Petition for a divorce *a vinculo*, filed on the 14th of May 1857, by the appellee against the appellant. The petition states that the parties were married on the 5th of February 1850, and avers that, within a few months thereafter, the defendant became very dissipated in his habits, and unkind and cruel in his treatment of the petitioner; that she bore and submitted to this ill-treatment, and, by every effort which an affectionate wife could make, endeavored to reclaim him and induce him to abandon his evil habits; that her efforts, however, proved ineffectual, and on the 8th of May 1854, she was compelled by his ill-treatment, not only in language but blows frequently inflicted upon her, to separate herself from him, and return to her father's house, where she has ever since resided; that from about six months after her marriage her husband has contributed nothing towards her support, and she was wholly dependent upon her father for the necessaries of life; that she has one child by the defendant, a daughter about six years old, who is also with the petitioner's father, and is entirely supported by him, the defendant having never contributed any thing to her support. She avers that there is no possibility of her reclaiming her husband, or of their ever living together again, and prays for a divorce *a vinculo*, and for general relief.

The defendant answered the petition under oath. He avers that his wife left him without just cause, but he states his belief that she was induced to do so through the solicitations of her parents, by offering and surrounding her with luxuries which his limited means were unable to afford. He

denies that he ever struck his wife a blow or ever used language to her unfit to be addressed by a husband to his wife. He denies that he is or ever has been a drunkard, although he admits that formerly he indulged occasionally in the use of ardent spirits, but has now abandoned such use forever. He avers that his wife and her parents knew his means when he applied for her hand—that he was a clerk at a salary of $400 *per annum.* The answer then shows that he made unsuccessful efforts, on borrowed capital, to improve his condition, but failed. He denies the charge that he has contributed nothing towards the support of his wife from six months after their marriage, and avers that from the time of their marriage until his wife's desertion and separation from him, his whole energies were strained to provide, to the utmost of his abilities, for his wife and child, and states what these exertions were, and that he would now gladly and cheerfully expend his whole time for their comfort. He avers that he has frequently sought to reclaim his wife, and since her desertion of him, has repeatedly sought to have an interview with her, but her parents have, up to this time, prevented it. He denies that there is no possibility of their ever living together again. On the contrary, he avers that they can live together and happily. He says he cannot possibly furnish his wife with all the luxuries she may now enjoy, but, let his means be great or small, he is ready joyfully to share them with her. The answer then, whilst resisting the application for a divorce, states that he has abstained from claiming a restitution of conjugal rights, only because his means and circumstances did not permit him to support his wife and child as he felt they deserved, and to avoid paining his wife's feelings by an angry and excited collision, that must have occurred in the discussion of the subject between her parents and himself.

Testimony was then taken on both sides, the purport of which is sufficiently stated in the opinion of this court. The following opinion was delivered by the court below (LEE, J.) upon passing the decree appealed from.

"Upon a careful examination of this petition for a divorce, and the circumstances and facts disclosed by the evidence, I

am of opinion that the complainant is entitled to a divorce, *a vinculo matrimonii*, under a construction of the Acts of Assembly referred to in the argument, and that such a case as this comes within the remedy indicated by the Act of 1849, which provides for a divorce *a vinculo*, where parties are living separate and apart, and have been thus separated for more than three years, with no default shown on the part of the complainant, who, in this case, was compelled by inability of her husband to maintain her, and also from ill treatment, which she alleges, to leave him and seek protection and support under her father's roof. Therefore, I, as a chancellor, must regard the *abandonment* as having been *occasioned* by the defendant, and if the complainant was compelled to leave him, (which is fully shown by the proof,) she ought to be entitled to the relief I now give, and, therefore, a decree divorcing her, *a vinculo matrimonii*, will be signed by me, the complainant to pay the costs.''

From this decree the defendant appealed.

The cause was argued before Le Grand, C. J., Tuck and Bartol, J.

*Wm. Schley*, for the appellant, argued:

1st. The court below had no jurisdiction in the case, except by virtue of the Act of 1841, ch. 262, and its supplements, and could not rightfully pass a decree *a vinculo*, except upon the allegation and proof of one of the causes specified in that Act.

2nd. The petition does not set forth any sufficient ground for such decree. There is no pretence of the causes, firstly, secondly and thirdly specified in that Act, and there is no allegation whatever of abandonment, by the appellant. The charge of cruel treatment is vague and indefinite, and even if properly alleged and proved would not justify the decree. The petition seeks to *excuse* the wife's admitted desertion of her husband by charging poverty and cruel treatment.

3rd. Upon the pleadings and proof in the cause there is no ground for divorce, even *a mensa et thoro*, much less *a vin-*

*culo.* Unless *past* irregularity in the use of ardent spirits and present *poverty*, constitute separately, or together, a ground of separation, there is no conceivable ground for the decree. That the husband has been unfortunate and is poor, is a very good reason why an affectionate wife should not desert him, but should cling to him with increased devotion, affording him the consolations of friendship, the comfort of her society, the rich treasures of her love, and thus inspiring him with hope, confidence and strong motives for future effort and exertion.

4th. But to dissolve the marriage bond, for light or trivial causes, is against public policy. If this decree could be affirmed the marriage relation would be so loose in Maryland that either party might dissolve it *at will.*

*Chas. H. Pitts,* for the appellee, argued, that the appellant's failure to support his wife, his drunkenness, and the violence committed on her person, justified her in leaving him, and that in law it was an abandonment of her by him, and that abandonment having continued for more than three years, the court properly granted the divorce *a vinculo,* under the Acts of 1841, ch. 262, 1844, ch. 306, and 1849, ch. 245. *Bishop on Marriage & Divorce, sec.* 515. 2 *Dana's Abr.,* 308. 3 *Bing.,* 127, *Houliston vs. Smyth. Reeves' Dom. Rel.,* 207. 4 *Rand.,* 662, *Almond vs. Almond.* 5 *Iredell,* 674, *Wood vs. Wood.* 2 *Curr. & Payne,* 22, *Houliston vs. Smyth.* 1 *Younge & Jervis,* 501, *Emery vs. Emery.*

BARTOL, J., delivered the opinion of this court:

There is no more painful and delicate duty devolved on a court of justice, than that of pronouncing upon the causes which justify a severance of the marriage relation. Public policy and public morals, alike, require that a relation so intimate and tender should not be broken for slight or trivial causes, and impose on us the duty of carefully weighing and considering the grounds upon which we are called on to affirm a decree dissolving the bonds of matrimony, between parties who respectively claim and resist the exercise of the power conferred on us by law.

The Act of Assembly of 1841, ch. 262, and its supplements, which confer jurisdiction, in such cases, on the chancery courts, limit and define the causes for which they are authorized to decree a divorce *a vinculo matrimonii*, and our plain duty is to decide whether, under the proof in this case, such cause has been shown.   One of these causes mentioned in the law, is an abandonment of the party complaining by the party complained against; for that cause the decree in this case was passed, and on that ground alone are we asked to affirm it.   By the Act of 1841, ch. 262, sec. 2, it is provided, that the court may decree a divorce *a vinculo* "where the party complained against has abandoned the party complaining, and has remained absent from the State for five years."   By the Act of 1844, ch. 306, absence from the State for five years is dispensed with, and it is provided that the Chancellor, &c., "shall, in no case, decree a divorce *a vinculo matrimonii* on account of abandonment on the part of the party complained against, unless they shall be satisfied, by competent testimony, that such abandonment has continued uninterruptedly for at least three years, and is deliberate and final, and the separation of the parties beyond any reasonable expectation of reconciliation."   The Act of 1849, ch. 245, gives power to the court to decree a divorce *a vinculo*, as provided for in the Acts of 1841 and 1844, "as well where the parties have lived separate and apart, without any reasonable expectation of reconciliation, in the State, as where the party complained against has lived out of the State."

We cannot agree with the late learned Judge of the Superior court, who passed this decree, that under these Acts of Assembly, the complainant was entitled to ask, or the court authorized to grant, the decree from which this appeal was taken.   Here the complainant was not abandoned by the defendant; she left his home and society and returned to her father's house, and had been living separated from him for a period of three years.   The argument of the appellee is, that the appellant's failure to support her, his intemperate habits and violence committed upon her person, justified her in leaving him, and was, in law, an abandonment of her by him.

We can very well imagine a case in which this argument would apply. If a man fails to supply his wife with such necessaries and comforts of life as are within his reach, and by cruelty compels her to quit him, and seek shelter and protection elsewhere, we should have no hesitation in saying it would be as much an abandonment of her by him, as if he had deserted her and gone away himself. In this case, the evidence does not sustain the charge that Levering failed, or was unwilling, to support his wife, or share with her the fruits of his scanty and meager earnings. There is evidence to prove that, on one occasion, forgetful of his duty and obligation to cherish and protect her, or, what is more probable, impelled by the madness of intoxication, he inflicted violence upon her person. Such conduct, when taken in connection with other facts and circumstances of the case, showing his ill-treatment of his wife, in the eye both of humanity and the law, would justify her in leaving his society; but it does not warrant a court to pronounce a decree of final separation between them. The statute requires that the abandonment shall continue uninterruptedly for at least three years. The proof in this case is, that the appellant has earnestly and anxiously sought to have his wife restored to him, and to renew their marital relations. In such a case, we think, it would be a perversion of the meaning of the law, to declare that there exists cause for a divorce *a vinculo matrimonii.* It does not come within either the letter or the spirit of the Acts of Assembly.

By the Act of 1841, the court is authorized to decree a divorce *a mensa et thoro* for cruelty of treatment. We have said that in this case there is evidence of such cruelty as justified the complainant in leaving the society of her husband. Such evidence, under the law, authorizes us to sanction that separation by pronouncing a decree of divorce *a mensa et thoro,* and this relief we are warranted in granting by the evidence in this cause, under the 3rd section of the Act of 1841. The same section authorizes the court "to order and direct who shall have the guardianship and custody of the children." In this case, there is one child, a daughter of

tender years, whom we think it our duty to confide to the custody and guardianship of her mother, the appellee.    There is no evidence in the cause, nor any intimation, of any unfitness, or want of qualification on her part, to take proper care of the child.

A decree will be signed, reversing the decree below, and divorcing the complainant and defendant *a mensa et thoro*.

*Decree reversed and decree for a divorce a mensa.*

(Decided June 28th, 1860.)