IN THE

# SUPREME COURT OF NEBRASKA.

## SEPTEMBER TERM, A. D. 1890.

PRESENT:

Hon. AMASA COBB, Chief Justice.
" SAMUEL MAXWELL, } Judges.
" T. L. NORVAL,

---

## WILLIAM HAWKE, APPELLANT, v. LOGAN EUYART, APPELLEE.

[Filed September 16, 1890.]

**Wills:** Republication: A Codicil ratifying and confirming a will, in whole or in part, will amount to a republication of the will, bringing down its words and causing it to speak as of the date of the codicil.

2. ———: Conditions: Reformation of Devisee. A devise in a father's will in favor of a son addicted to the intemperate use of intoxicating liquors, and who had intermarried with one Mrs. G. against his father's will, made in form to the executors of the will, directing them at the end of ten years from his death, in case the son and legatee should have, in their judgment, thoroughly reformed of his intemperate habits, of his immoral consortings, and evil associations, and should then be living, with

(149)

evident promise so to continue during life, a virtuous, temperate and commendable life, to convey the lands and trust funds devised, to the son and legatee. *Held*, That in so far as the devise was conditional on the reformation of the son and devisee the same would be upheld.

3. ——: RESTRAINT OF MARRIAGE. But a subsequent provision that such trust property and funds should not be transferred until the executors should have satisfactory proof that the devisee " has permanently freed himself from all influence, connections, associations, cohabitations, and relations of every name, character, and description of and with Mrs. G., and her relatives, friends and intimates," *held*, to be a condition against public policy, and void ; and that upon the first condition, exempt from the second, the devisee will be entitled to the transfer and conveyance of the land and trust funds of the legacy.

APPEAL from the district court for Otoe county. Heard below before FIELD, J.

*John C. Watson, Frank P. Ireland,* and *L. W. Billingsley,* for appellant :

A condition annexed to a devise which discourages or interferes with the marriage relation is void. (*Potter v. McAlpine,* 3 Demarest [N. Y. Sur. Rep.], 108 ; *Conrad v. Long,* 33 Mich., 78 ; *Wren v. Bradley,* 2 De Gex & Sm. [Eng.], 49 ; *Brown v. Peck,* 1 Eden [Eng.], 140 ; *Tennant v. Braie,* Tothill [Eng.], 241 ; 1 Story, Eq. Jur., sec. 291, and note ; *Keily v. Monck,* 3 Ridgw., Parl. [Ir.], 205, 244, 247, 261 ; *Morley v. Rennaldson,* 2 Hare [Eng.], 570 ; *Crawford v. Thompson,* 91 Ind., 266 ; *Wilkinson v. Wilkinson,* L. R. 12 Eq. [Eng.], 191 ; 2 Redfield, Wills, sec. 285 ; 2 Jarman, Wills, 57, 58; Schouler, Wills, sec. 604.) An illegal condition precedent defeats the devise, while an illegal condition subsequent is void and the devise stands. (Williams, Exrs. [6 Am. Ed.], 1372 ; 2 Redfield, Wills, p. 285 ; 20 Am. L. Rev., p. 510, sec. 10, and note ; 1 Roper, Legacies, ch. 13, sec. 11 ; *Randall v. Marble,* 69 Me., 310 ; *Parker v. Parker,* 123 Mass., 585 ; *Merrill v. Emery,* 10 Pick. [Mass.], 597 ; 4 Kent, Com., 130.) The condition in this case is an

evasion of, and fraud upon, the law. (*Scott v. Tyler*, 2 Dick [Eng. Ch.], 720; *Harvey v. Aston*, 1 Atk. [Eng.], 379; *Richardson v. Baker*, 2 Id., 321; *Marples v. Bainbridge*, 1 Madd. [Eng.], 590.)

*M. L. Hayward, contra:*

The condition is one precedent and not impossible (2 Jar., Wills, pp. 520–1); and until it has been performed no estate can vest (*Van Horne v. Dorrance*, 2 Dall. [U. S.], 317; *Finley v. King*, 3 Pet. [U. S.], 375). A condition that a legatee must first learn to live and conduct himself properly is valid (*Den v. Messenger*, 4 Vroom [N. J.], 499; *West v. Moore*, 37 Miss., 114); likewise one that no estate shall pass until legatee's debts are paid (Redfield, Wills, vol. 2, 300; vol. 3, 496; Lewin, Trusts, 135; 2 Jarman, Wills, pp. 548–9; *Nichols v. Levy*, 5 Wall. [U. S.], 441; *Bramhall v. Ferris*, 14 N. Y., 41; 1 Otto [U. S.], 16). While it is true that a condition in *general* restraint of marriage is void, a special restraint as to marriage with a particular person, imposed for the welfare of the legatee, is valid. (Story, Eq. Jur., secs. 274, 277, 281, 285; 2 Redfield, Wills, sec. 30, ch. 11; *Collier v. Slaughter*, 20 Ala., 263; *Finlay v. King*, 3 Pet. [U. S.], 346; 2 Jarman, Wills, 513, 564–6, and notes 28–31; *Garrett v. Scouten*, 3 Denio [N. Y.], 334; *Luigart v. Ripley*, 19 O. St., 24; *Pringle v. Dunpley*, 53 Am. Dec., 110; *Snider v. Newsom*, 24 Ga., 139; *Cooper v. Remsen*, 5 Johns. Ch. [N. Y.], 459; *Bostick v. Blades*, 59 Md., 231; *Graydon v. Graydon*, 23 N. J. Eq., 230.) Where the condition becomes impossible, no estate will vest. (Coke, Litt., 206 *a*, I 376, 206 *b*; Jarman, Wills, vol. 1, pp. 575, 677, 796, 805; vol. 2, p. 520; 4 Kent [5th Ed.], 125; *Moankley v. Riggs*, 19 Johns. [N. Y.], 14; *Taylor v. Bullen*, 6 Cow. [N. Y.], 627; *Wells v. Smith*, 2 Edw. Ch. [N. Y.], 78; *Davis v. Angel*, 8 Jur. [N. S.], 1024.) If the condition is void, it will not benefit the devisee. (*Taylor v.*

_Mason_, 9 Wheat. [U. S.], 350.) A legacy whose conditions have not been complied with, does not vest because of the absence of a reversionary clause. (_Parsons v. Winslow_, 6 Mass., 180.)

COBB, CH. J.

The appellant alleged in his petition to the county court of Otoe county that he was the son and heir at law of Robert Hawke, late of said county, deceased, whose last will was offered for probate by Logan Euyart and George W. Hawke, executors named therein, and that he appeared and objected to the probate of said will for the reasons:

I. That no citation of notice was issued or served upon him.

II. That the paper purporting to be the last will and testament of deceased was not his will, but was obtained and procured by circumvention and by ruse on the part of Logan Euyart, one of the executors; that the will is void so far as appellant is concerned, as in absolute restraint of marriage and against public policy, and that deceased was not, at the time of making it, of sufficient testamentary capacity to make a will, and that the contingency upon which its bequest to appellant was to take effect was too remote.

The appellant asked that if the will be admitted to probate, the estate depending upon the marriage condition. of appellant be ordered to immediately take effect, absolved from the condition imposed, and that he be entitled to the property willed to him.

Notice having been given by publication of the motion to admit the will to probate, there was a hearing in the county court on June 20, 1887. Nathaniel Adams and William F. N. Houser were sworn and examined as witnesses to the will, and the court found that the will and the several codicils thereto were duly executed by Robert Hawke, who was, at the time of executing the same, of full age, of sound mind and memory, and not under restraint

or under influence of any kind, and was competent in all respects to devise real and personal estate; that said instrument is the last will and testament of said deceased and ought to be allowed as such, and that the persons therein named as executors are appointed as such upon giving bond in the sum of $30,000, with sufficient sureties in accordance with the statute.

To all of which the appellant objected and took his appeal to the district court.

There was a stipulation by the parties, proponents and contestant, that the appeal should apply and extend only to the matter of the bequest to William Hawke, and should not in any way affect the other devisees and legatees of the estate, the contestant asking no greater amount than is given him in the will, and he appeals only from the conditions and restrictions attached to such bequest.

There was a trial in the district court, July 10, 1888, in which the proceedings of the county court were affirmed, and the petition of the appellant was dismissed, to which exceptions were taken, and the appeal brought into this court.

The bequest to appellant under the will dated February 16, 1884, is as follows:

"Item Third. I give devise and bequeath to the executors of this my will, hereafter nominated and appointed, and to the survivors or survivor of them, all that certain piece or parcel of land situate in the county of Otoe, and state of Nebraska, known and described as the northwest quarter of section six, township eight north, of range fourteen east, of the sixth principal meridian, containing one hundred and seventy-four and one-half acres, more or less, together with the tenements, hereditaments, and appurtenances to the same belonging, or in anywise appertaining, and the sum of ten thousand dollars in money in trust, nevertheless, and to and for the uses, interests, and purposes hereinafter limited, described, and declared; that is

to say, upon the trust that my said executors, the survivors or survivor of them, shall, within six months after my decease, enter into and upon the above mentioned and last described lands and tenements, and lease and to farm let the same to a good, careful, capable, honest, and industrious tenant or tenants, on such terms and conditions as my said executors, or the survivors or survivor of them, shall deem meet and just, and out of the rents and profits arising from said lands, first, pay and discharge all taxes, revenue, duties, and assessments of every name and nature legally imposed, levied, and assessed thereon.

"Second. Make all necessary and proper repairs to the buildings, fences, and enclosures, including painting of buildings and pruning of all orchards, trees, and shrubs growing on said premises, and embracing the replanting of fruit trees if destroyed by the elements, to the extent of preventing the premises deteriorating in value or going to waste; and any balance of such rents, issues, and profits remaining to invest in some good six per cent interest bearing security issued by Otoe county, in the state of Nebraska, or in securities issued by said county legally bearing a greater rate of interest than six per cent per annum; and in like securities my said executors, or the survivors or survivor of them, are hereby directed to invest the said sum of $10,000 and the income thereupon, less such sum or sums as shall be required to pay the taxes and assessments levied and assessed on the trust funds so held by them as aforesaid, to be in like manner invested from time to time for the period of ten years from the time of my decease. In the event my executors shall not be able to procure the class of securities above mentioned for the investment of such trust funds, then they, or the survivors or survivor of them, may invest such trust funds and the accumulations therefrom in bonds or other securities legally issued by the state of Nebraska, bearing at least six per cent per annum interest, or in bonds or promissory notes secured

by a first mortgage on lands situate in Otoe county, under improvement, as farms, of at least double the value of the amount of the mortgage, exclusive of the buildings, fences, and enclosures, bearing interest at not less than seven per cent per annum, payable annually.   And in case, at the end of ten years from my decease, my son William Hawke shall have become, in the judgment of my said executors, the survivors or survivor of them, permanently and thoroughly reformed of his intemperate habits, of his immoral consortings and evil associations, and shall then be living with evident promise to continue so to live, during the remainder of his life, a virtuous, industrious, temperate and commendable life, then and thereupon, within twelve months after the expiration of ten years from my decease, my said executors, the survivors or survivor of them, are hereby directed and required to convey the lands and premises hereinabove last mentioned in item third of this my last will and testament, with the tenements and appurtenances, to my said son William Hawke, and pay over, assign, transfer, set over, and deliver to him, my said son William Hawke, the securities held by them, or by either of them, together with all moneys, rents, interest, and profits, representing the said sum of $10,000 held in trust as aforesaid, and the unexpended income arising therefrom, and the net rents, issues, and profits of said real estate during said period; *Provided, nevertheless, further,* That such trust property and funds shall not be transferred by my said executors, or by the survivors or survivor of them, until my said executors, or the survivors or survivor of them, shall have satisfactory proof and evidence that my said son William Hawke has permanently freed himself from all influence, connections, associations, cohabitations, and relations of every name, character, and description of and with a certain notorious and disreputable woman known by the name of Mrs. Sadie Gladstone, and with all relatives, friends, and intimates of that woman.   It being my imperative command

that no part, parcel or portion of such trust funds, or of any
other part or portion of my worldly goods or estate, shall
come to the hands of, or be used, or applied for the use or
benefit of said woman Sadie Gladstone under any circum-
stances or conditions whatsoever.

" ' *And provided further*, That in the event my said son
William Hawke should, at any time before the expiration
of ten years from my death, through illness or otherwise,
become so impoverished as to be liable to become a public
charge, then my executors, or the survivors or survivor of
them, are authorized and empowered out of the rents, issues,
and profits, and the income of said trust property and trust
funds, from time to time to afford and provide him such
reasonable, necessary support and raiment as they shall
deem just and proper under the circumstances, but they
are not to furnish any money or other means to gratify the
cravings for intoxicating liquors or for immoral associa-
tions.   *   *   *

" But in the event of my said son William Hawke shall
leave issue of his body him surviving, born of a respectable
maternal parent in lawful wedlock, and not born of the
said Mrs. Sadie Gladstone, then I order, direct, and require
my said executors, the survivors or survivor of them, to use,
from time to time as they may deem proper, out of the
rents, issues, and profits and income of said trust property
and trust funds, to afford a comfortable support, including
raiment and education for such child or children of my said
son William Hawke, until such child or children shall
attain the age respectively of twenty-one years, and upon
reaching that age, or marrying, if a female or females, my
executors are authorized and empowered to make such
reasonable advancement, in their discretion, as the circum-
stances and position in life of such child or children of my
said son William Hawke shall seem to justify out of the
profits and income which have arisen from such trust prop-
erty and trust funds, and upon attaining the age of thirty-

three years respectively, said real estate and funds so held in trust as aforesaid to be divided, share and share alike, less any advancement made, from each share respectively, between such children of my said son, and their heirs by representation; *Provided, always,* That my executors, or any of them, shall not, with any funds, money, or property coming from my estate, aid, maintain, or support, or assist therein, directly or indirectly, any child or children by my son begotton on the body of the said notorious and disreputable woman Mrs. Sadie Gladstone, whether born in lawful wedlock or not.

" And if the heirs of his body surviving my son William Hawke shall be born of the body of the said Sadie Gladstone, then said trust property and trust funds shall be distributed and disposed of by my said executors, as hereinabove directed, the same as if my said son William Hawke had died without issue, him surviving.

" In the event my son William Hawke should fail to reform his intemperate habits, and from his immoral consortings and evil associations, or otherwise refuse to comply with the conditions upon which my executors are authorized and required to convey the real estate described and the $10,000, with the net rents, issues, profits, and income thereof mentioned in this item third of my last will and testament, then and in that case it is my will and I order and direct my said executors to hold said premises and trust funds with the net accumulation therefrom invested and rented as aforesaid, and out of the proceeds thereof, from time to time as required, use sufficient, if my said son's circumstances shall require it, to pay and discharge the expenses for a comfortable maintenance and support during his natural life, or until he shall have complied with all the conditions and furnished the evidence to entitle him to a conveyance and assignment from my said executors to said trust property and trust funds with the accumulation thereof, as is hereinabove provided and directed, when,

although more than ten years shall have passed since my decease before the conditions aforesaid have been complied with by my said son William Hawke, my said executors, the survivors or survivor of them, will and shall convey and assign said trust property and trust funds and the accumulations therefrom upon the express condition, however, that such conveyance and assignment of said property and trust funds and the accumulations therefrom shall be void, and the property thereby conveyed and assigned shall revert to my said executors, the survivors or survivor of them, or to my said wife and daughters, if all my executors shall than be dead, they thereupon shall be repossessed thereof, the same as if said conveyance and assignments had never been made, if my said son William Hawke shall, at any time after the execution and delivery of said conveyance and assignment, marry or cohabit with the said notorious and disreputable woman Mrs. Sadie Gladstone, and he, my said son William Hawke, having failed or refused to comply with such conditions, and failed to receive a conveyance and assignment of such trust property and trust funds, after the death of my said son William Hawke, my said executors, the survivors or survivor of them, are directed and required to distribute such trust property and trust funds, with their accumulations, to my wife, Elizabeth A. Hawke, and daughters, Ella Spencer, Lulu Hawke Rector and Minnie Hawke, and to their heirs by representation, share and share alike, at the time and in the manner hereinabove directed; *Provided,* No part thereof shall descend to the heir or heirs of my son William Hawke begotten on the body of the said Sadie Gladstone."

The first codicil to the will of Robert Hawke was executed on July 29, 1885, and the second and last codicil is dated March 8, 1887, so that the last date is the completion and publication of the will. It will be observed that the devises to, and provisions in favor of, the appellant are made to depend upon certain conditions. These are, first,

that at the expiration of ten years from the death of the testator the appellant should have become, in the opinion and judgment of the executors, permanently and thoroughly reformed of intemperate and evil habits, his immoral consortings and associations, and should then be living with evident promise to continue to live, for the remainder of his life, a virtuous, temperate, and commendable life.

Second, that the executors should have satisfactory proof and evidence that the appellant had permanently freed himself of all influences, connections, associations, cohabtiations, and relations of every name, character, and description with Mrs. Sadie Gladstone.

After the argument of this case, and at the consultation of the court, we were all of the opinion that the first conditions imposed in the testator's will were valid and binding on the executors and on the legatee; but that those of the second class, in view .of the facts and circumstances given in evidence, were void as against the public policy of the state and could not be sanctioned.

While the will itself was executed and bears date of February 16, 1884, there is a codicil to it, which, to all intents and legal purposes, republished and executed the will on the 29th day of July, 1885.

It .appears from the bill of exceptions, and is not disputed, that the appellant was married to Mrs. Sadie Gladstone on the 16th of September, 1884. It is to be mentioned, not as a controlling fact, that while there is an entire absence of direct evidence on the subject, yet from all the evidence, and from the legal inferences to be drawn, there is a strong presumption that the marriage of the appellant with Mrs. Gladstone was known to the testator at the time of the last publication of his will. That condition had taken its place for two years and six months prior to the last fact. As to the rule in this instance, see *Van Cortlandt v. Kip*, 1 Hill, 590: " Where a codicil is so

executed as to operate a republication of the will, both should be read and construed together as one entire intrument." See, also, *Brimmer v. Sothier*, 1 Cushing, 118; *Neff's Appeal*, 48 Pa. St., 501; *Snowhill v. Snowhill*, 3 Zabriskie, 447.

The question then is not wholly whether the exactions of the will that the appellant shall have freed himself of all the influences and associations of Mrs. Gladstone, but are in restraint and in the continuation of the marriage relation, the same having been entered into as stated.

I think there can be no doubt, either as a question of reason from moral premises, or of legal authority, not only that such condition is void, but having been declared void it leaves the bequest of the testator operative the same as though the condition had not been sought to be made by will. (See *Roper on Legacies*, 757, and cases cited; *Conrad v. Long*, 33 Mich., 78; *Wren v. Bradley*, 2 De Gex & Smales, 49; *Brown v. Peck*, 1 Eden, 140; *Tennant v. Braie*, Tothill [Ed. 1820], 77.)

These authorities, cited by counsel for appellant, are directly to the point stated and seem to be conclusive of it. Had the devisee not been lawfully married at the date of the last publication of the will of the testator, I should be of the opinion that, under the arguments and authorities of the counsel for appellees, the peculiar conditions of the will here considered would be upheld; but wholly otherwise when the marriage had been solemnized before the publication of the will.

The decree of the district court is reversed and the cause is remanded with a direction to that court to enter a decree in accordance with this opinion.

JUDGMENT ACCORDINGLY.

THE other judges concur.