WILLIAM J. FLEISHMAN *v.* HOWARD CALVERT BREGEL ET AL.

[No. 38, January Term, 1938.]

*Decided March 9th, 1938.*

The cause was argued before BOND, C. J., URNER, OFFUTT, PARKE, SLOAN, MITCHELL, SHEHAN, and JOHNSON, JJ.

*Max Sokol* and *M. William Adelson,* for the appellant.

*Malcolm J. Coan,* with whom was *Howard Calvert Bregel,* on the brief, for the appellees.

JOHNSON, J., delivered the opinion of the Court.
Anna Louise Fleishman, of Baltimore City, departed

this life on December 28th, 1935. Her last will and testament was subsequently admitted to probate in the Orphans' Court of Baltimore City, and by the third item of that instrument it is provided:

"I give, devise and bequeath unto my Trustee hereinafter named and subject to the trusts hereinafter set forth, the following ground rents and properties, and also all the rest and residue of my estate: An annual ground rent of Forty-eight Dollars, issuing and payable out of property No. 1823 E. Lafayette Avenue, an annual ground rent of Sixty Dollars issuing and payable out of property No. 28 Hillcrest Avenue, an annual ground rent of Ninety Dollars issuing and payable out of property No. 3120 Northway Drive, an annual ground rent of Ninety Dollars issuing and payable out of property No. 3125 Northway Drive, an annual ground rent of Seventy-five Dollars issuing and payable out of property No. 1110 Dukeland Avenue, an annual ground rent of Ninety Dollars issuing and payable out of property 3040 Arunah Avenue, and properties No. 5509 Sefton Avenue and 4537 Harford Road, said Trustee to collect the rents, income and profits therefrom, and to divide the net proceeds into two (2) equal parts, and to pay said one-half of said net income to my son William J. Fleishman, subject to the stipulation hereinafter mentioned, and the other and remaining equal one-half part of said income to my son Calvin D. Fleishman, and to continue in such manner until my youngest son, Calvin D. Fleishman, shall attain the age of Thirty years, and at such time said trust shall cease and all my said properties and ground rents above set forth, shall immediately vest in and become the property of my said two sons, William J. Fleishman and Calvin D. Fleishman, equally, as tenants in common.

"Provided, however, that at the time my said son Calvin D. Fleishman, shall have arrived at the age of thirty years, or at the time of my death, should my said son William J. Fleishman be living with his present wife, then, and in that event, said trust shall continue as to William J. Fleishman, and my said trustee shall continue

to pay to him said one-half of the net income, into his hands and no other, and after his death my said trustee to pay said net income unto his children then living, and if there are no children, then said trust shall cease and the entire corpus of my estate shall become due and payable to my said son, Calvin D. Fleishman. If, however, at the time of my death, and at the time my son Calvin D. Fleishman shall have arrived at the age of thirty years, my son William J. Fleishman shall be no longer married to his present wife then said trust shall cease and my estate be vested in and become the property of my said two sons, equally, as tenants in common.

"In the event that my youngest son Calvin D. Fleishman should predecease me, or depart this life before attaining the age of thirty years, said trust shall operate until my said son William J. Fleishman shall attain the age of thirty years, and from and after that time, said trust shall cease and the whole of said properties and ground rents shall become the absolute property of the said William J. Fleishman.

"But in the event my said son, William J. Fleishman, shall be living with his present wife at that time, then said trust shall continue, and my said trustee shall pay the net income only into the hands of my said son, William J. Fleishman, and upon his death without said marriage being dissolved, then to his issue, and if there be no issue left, then said trust shall become a part of my general estate.

"And in the event my said son, William J. Fleishman, should predecease me, or depart from this life before attaining the age of thirty years, then said trust shall operate as to Calvin D. Fleishman, as above set forth until he attains the age of thirty years, and then said trust shall cease and my said properties and ground rents shall vest in my said son, Calvin D. Fleishman, absolutely, free and clear from said trust."

William J. Fleishman, son of the testatrix, filed his bill of complaint in the Circuit Court of Baltimore City, in which he alleged: (a) The existence of said last will

and testament, a certified copy of which was exhibited with the bill; (b) the provisions of said third item; (c) that at the time of the execution of said will by the testatrix he was married and living happily with his wife, which condition existed after the death of the testatrix down to the time of filing the bill, and he intended continuing that relation; (d) that to the extent said provisions of Item 3 dealt with his marital status at the time of his mother's death and with his future marital status, they were void and of no effect, because against public policy, further that they constituted an urge or direction on the part of the testatrix to the plaintiff to institute divorce proceedings against his wife or to discontinue their marital relations; (e) that as a beneficiary under the trust created by said third item, he petitioned the court to assume jurisdiction thereof, and to construe said third item dealing with his future marital status and decree as null and void the provisions relating thereto.

The trustee under the trust created by the will of decedent, as well as the decedent's executors and Calvin D. Fleishman, all of whom were named defendants in the bill of complaint, demurred thereto. It appeared in the bill that Calvin D. Fleishman was alive, and there was no allegation that he had attained the age of thirty years. Because of this the chancellor felt the bill had been filed prematurely to the extent that it sought a construction of the provision relating to William J. Fleishman's share of the corpus. He accordingly passed an order sustaining the demurrer in relation thereto, with leave to William J. Fleishman to file a supplemental bill subsequent to the death of Calvin D. Fleishman occurring before the latter attained the age of thirty years or subsequent to his arrival at that age, but overruled the demurrer to that part of the bill alleging the existence of a trust and praying the court to assume jurisdiction thereof. While the appeal is from the order, the sole objection raised relates to that part of it which sustained the demurrer

and declined, for the reasons stated, to construe said third item.

This court, in construing sections 28 to 34, inclusive, of article 16 of the Code, relating to declaratory decrees, has held that the provisions of said sections cannot be invoked to determine a moot or abstract question, and, generally speaking, it is only in cases where equity would have jurisdiction if some specific or ultimate relief were asked that the court would be justified in proceeding to a declaratory decree under those sections. *Pennington v. Pennington,* 70 Md. 418, 430, 17 A. 329; and *Wethered v. Safe Deposit & Trust Co.,* 79 Md. 153, 163, 28 A. 812. And in *McCoy v. Johnson,* 70 Md. 490, 492, 17 A. 387, our predecessors, in considering the effect of chapter 478, Acts of 1888, now sections 28-34 of said article, said: "The jurisdiction, then, conferred by the act of 1888, can only be exercised in regard to such matters as are properly cognizable by a court of equity; and its exercise in regard to these, the act wisely provides, shall rest in the discretion of the court."

But that this general rule, to the effect that courts of equity will not determine rights which are in the future and are contingent or uncertain, is not unvarying, will appear from a consideration of *Heald v. Heald,* 56 Md. 300; *Devecmon v. Shaw,* 70 Md. 219, 16 A. 645; *Borchard, Declaratory Judgments,* secs. 339, 340, 542, 543; 33 *C. J., Declaratory Judgments,* sec. 57. See, also, Annotations, 50 A. L. R. 42, 68 A. L. R. 110, 71 A. L. R. 1426, 87 A. L. R. 1205.

In the case first cited, the bill was filed by a trustee, who under a will was directed to make large investments upon certain trusts and limitations. Grave doubts had arisen concerning the validity of those trusts and the rights of parties in regard thereto. While it was there said that it was not the province of courts to declare the rights of parties except in cases where immediate relief could be given, yet, by reason of the peculiar conditions there present, the trustee was entitled to the aid of the court in instructing him as to his duties and pro-

tecting him in their discharge, then and in the future emergencies of testator's family, and jurisdiction was entertained.

In *Devecmon v. Shaw, supra,* the appeal was from a decree of the chancellor construing the will of John S. Combs, and it was on appeal to this court contended that such decree should be reversed because of its premature passage. Judge McSherry, in the course of that opinion, held that, since appellants themselves had sought a construction of the particular provision of the will in the lower court and had argued it in this court, they were not in position to ask for a reversal of a portion of the decree because it was passed prematurely. He cited *Heald v. Heald, supra,* as authority for the proposition that under certain situations the rights of the parties *in futuro* would be determined.

Again in *Pennington v. Pennington,* 70 Md. 418, 17 A. 329, Judge Alvey, speaking for this court, concerning the pertinent sections of article 16 hereinbefore mentioned, said: "Doubtless in some cases the jurisdiction may be very beneficially exercised; but it should never be invoked for the purpose of having determined mere moot-points, or mere abstract or experimental questions. In all cases the court should see that there is a real *bona fide* question for controversy involved as between the parties to the cause, and that there is an existing propriety for its immediate decision."

And a similar rule was announced in *Wethered v. Safe Deposit & Trust Co., supra,* but in *Hawkins v. Ghent,* 154 Md. 261, 140 A. 212, 214, the chancellor's decree went no further than to hold valid the provision of the will of Amanda Hawkins in an attempted execution of the power of disposition reserved to her in a deed of trust from herself and husband. That decree was affirmed, and it was there said by Judge Urner: "When events shall have ended the uncertainties which make the secondary limitations contingent, the question of their validity may then be presented for decision by persons having a definitely ascertained interest in the inquiry. But it would

be premature now to decide such a question at the instance of parties who cannot yet claim, and may never be able to assert, the rights to be affected by the adjudication."

From the decisions above quoted, it follows that no hard and fast rule exists for determining in what cases courts of equity will entertain jurisdiction and decide questions involving future rights, but the question is dependent upon the circumstances of each particular case, but if the need and necessity for such determination are present, relief will in no case be denied.

And apparently in other jurisdictions, where the rule against declaration of future rights is similar to that of Maryland, courts have entertained jurisdiction concerning them when a question of public policy was presented.

Thus in *Hawke v. Euyart,* 30 Neb. 149, 46 N. W. 422, the will contained a provision that the corpus of the estate should be transferred to the son at the expiration of ten years if (a) he reformed his intemperate habits, and (b) had permanently freed himself from association with Mrs. Sadie Gladstone. Mrs. Gladstone was the son's legal wife at the date of the last publication of the will, and although by its terms the son could not receive any part of the corpus until the expiration of ten years, jurisdiction was entertained and the will was construed; the court holding the second condition void as against public policy. See, also, *Wilkinson v. Wilkinson,* L. R. 12 Eq. 604; *In re Devlin's Trust Estate,* 284 Pa. 11, 130 A. 238; *Slingerland v. Slingerland,* 109 Minn. 407, 121 N. W. 19.

In the case at bar, appellees, while insisting in their brief that the bill in this case was prematurely filed, during argument in this court expressed a willingness that the third item of the will be construed, stating that Calvin D. Fleishman, the younger brother, was nearing the age of thirty years, and the question would, in any event, have to be decided in the very near future. Moreover, counsel for both parties dealt with the point in their briefs and during oral argument, and while this

circumstance of itself would be insufficient to confer jurisdiction, appellant's situation as here presented is in our judgment such as to render a decision of the question not only proper and expedient, but quite essential, apart from the question of public policy. When his younger brother becomes thirty years of age, provided appellant is no longer married to or living with his present wife, the trust created under the third item of the will ceases and one-half of the corpus becomes his property, and likewise becomes his property if the younger brother dies before reaching thirty when appellant reaches that age, unless he is then living with his present wife, in which case the trust continues and throughout his life he is to receive only the net income from one-half the corpus, and upon his death without the marriage being dissolved the same is to his issue, and, if none be left, the trust becomes a part of the general estate of the testatrix. It, therefore, appears that since the death of Anna Louise Fleshman appellant has had a very real and present interest in the matter, and this is increasing from day to day. If the condition with reference to not being married to nor living with his wife is valid, he is of necessity under an obligation to decide in the near future whether to continue his marital relations, and thereby forego the receipt of one-half of the corpus of the estate, receiving only the net income thereon throughout his life, or take some steps either toward a dissolution of the marriage relation, or in any event to cease living with his wife. And if, the condition being valid, he should decide to accept one-half of the corpus, this in turn would involve separating from the wife, to whom he is happily married, and with whom he is contented. Such a change in his life cannot be brought about immediately, and we feel that a construction of the will is sufficiently vital, necessary, and expedient to warrant us in entertaining jurisdiction for that purpose.

In our approach to the problem of construing the third item of Mrs. Fleishman's last will and testament, the

policy of the state with regard to marriage and divorce should not be lost sight of. The pronouncements of this court concerning that policy, as stated by Judge Bartol in *Levering v. Levering,* 16 Md. 213, and by Judge Digges in *Gellar v. Gellar,* 159 Md. 236, 150 A. 717, 719, are clear and succinct. In the last cited case, it is said: "It may be that individuals who constitute the public have lost sight of what the courts are bound to recognize, that the state, representing society as a whole, has a real and vital interest in maintaining the marital status, so that it may not be dissolved except for grave and weighty causes. This would seem to apply with even greater force to application for divorce *a mensa et thoro,* which is practically nothing more than a request for judicial permission to live separate and apart, and which must result in the condition described by an eminent judge, of throwing the parties back upon society in the indefinite and dangerous character of 'a wife without a husband and a husband without a wife.'"

It is contended by appellant that the conditions in the third item of the will, whereby, upon the death of the younger brother or his attaining the age of thirty years, appellant takes one-half of the corpus of the estate, if no longer married to his present wife, and the subsequent condition of said item by which he takes the whole of said corpus upon attaining the age of thirty years, his younger brother having previously departed this life, but takes the whole only in the event that he be not then living with his present wife, in either of which cases he receives throughout his life the net income from one-half of the corpus or from all of it, depending upon whether the younger brother lives until he is thirty years of age, are conditions that constitute an urge, inducement, or direction to him to cease living with his wife, to separate from her or divorce her in order to obtain a share of the corpus of the estate. Against this contention, appellees, while conceding that the true test of the validity of the conditions depends upon whether it was the intention of the testatrix to bring about a future separation

or divorce beween the parties, assert that no such intention can be found from the language used by testatrix; that the purpose of the will in imposing such conditions was to prevent his wife from obtaining control of appellant's share of the corpus of the estate or of the income therefrom. In support of this contention, we are referred to *Snorgrass v. Thomas,* 166 Mo. App. 603, 150, S. W. 106, 107; *Coe v. Hill,* 201 Mass. 15, 86 N. E. 949; *In re Tieman's Estate,* 152 Wash. 82, 277 P. 385; 28 *R. C. L., Wills,* sec. 316; 2 *Schouler on Wills, Executors and Administrators,* (6th Ed.) sec. 1354.

In the case first cited, the will contained a condition "that if my said daughter shall lose her husband * * * then said half held by said trustees of my said estate shall be paid and handed over to my beloved daughter * * * absolutely, to do with as she may desire." Subsequently the daughter obtained a divorce from her husband, and the court held the term "shall lose her husband" was broad enough to include a termination of the marriage relation through divorce proceedings, and that the language employed did not necessarily tend to induce the wife to separate from the husband. The plain and ordinary meaning of the words used by testator in that case were so at variance, both in substance and meaning, with the language here employed by Mrs. Fleishman, that the decision in the former case cannot be regarded as binding in this case.

In *Coe v. Hill, supra,* there was a gift of property in trust for the testator's daughter until her legal separation from the husband, on which event the entire fund was to vest in the daughter. The court held the condition valid; that testator neither meant nor intended that petitioner should procure either her husband's death or a divorce in order to accelerate the enjoyment of her property. It is to be noted, however, that the term "legal divorce" was there used, and that, at least in this state, would imply that the wife, an innocent party, was entitled to a divorce from her offending spouse upon some ground recognized by law. Clearly, the present case is

distinguishable, for here the conditions are not that appellant shall secure a divorce for any cause recognized by the laws of this state, but in order to receive his share of the corpus he is to be "no longer married" to his wife; that if he be "living with" his present wife, the trust is to continue, and upon appellant's death "without said marriage being dissolved, then to his issue." Among the allegations contained in the bill that are admitted by the demurrer, one is that, at the time of the making of the will as well as at the death of the testatrix and at the present time, appellant is happily married to his wife. How, under such circumstances, can he procure a divorce without committing a fraud upon the court, as well as upon his wife?

To whatever extent, therefore, that the decision in the last cited case could be regarded as authority for sustaining the validity of the conditions under discussion, it is not persuasive in view of the policy of this state in regard to marriage and divorce, and the same may be said of *In re Tiemans's Estate, supra.* Nor do we understand the reference to *R. C. L., supra,* as being in conflict with the other authorities we have examined. At the outset, it is there stated: "Generally speaking a condition, the tendency of which is to induce a husband and wife to live separate or to be divorced, is void on grounds of public policy and public morals." The author then refers to decisions of various jurisdictions, in which it was held that the conditions under consideration were not an inducement to obtain a divorce nor in restraint of marriage, and concludes: "The principle is that a devise or legacy conditioned on a divorce or separation is valid if it is made by way of provision for an existing or an anticipated separation, or for any other reason does not operate as an inducement to a separation." Here, it is plain that there has been at no time an existing or anticipated separation of appellant from his wife.

The reference to *Schouler on Wills, Executors and Administrators, supra,* is simply to the effect that a bequest in trust that becomes absolute at the end of the

marriage relation of the beneficiary is not void where its purpose is to protect her from the action of her husband. But in our judgment the nature of these conditions is such as to preclude a logical inference that this was Mrs. Fleishman's purpose.

That an absolute interest of one-half of the trust estate mentioned in the third item of the will is far more valuable than the income upon the fund during appellant's life is self-evident. But under the conditions of that item, he must divorce his wife or in any event cease to live with her in order to have the corpus. He is thus afforded a financial reward for securing a divorce or ceasing to live with his wife. Since he has no valid reason for not living with her, he can secure a divorce only through fraud or collusion, and in either case the conditions which induce him to take such action for reward are against public policy. To enforce them by compliance would tend to disrupt appellant's family relations, and it is inconceivable that a more improper motive for terminating such relations could be held out to him than by the provisions in question. This reasoning is, we feel, fully supported by the following decisions: *Potter v. McAlpine,* 3 Dem. (N. Y.) 108; *In re Haight,* 51 App. Div. 310, 64 N. Y. Supp. 1029; *Randall v. Marble,* 69 Me. 310; *Knost v. Knost,* 229 Mo. 170, 129 S. W. 665; *In re Hutchins' Estate,* 147 Misc. 462, 263 N. Y. S. 896; *Brizendine v. American Trust & Savings Bank,* 211 Ala. 694, 101 So. 618; *Tripp v. Payne,* 339 Ill. 178, 171 N. E. 131; *Conrad v. Long,* 33 Mich. 78; *Witherspoon v. Brokaw,* 85 Mo. App. 169; *Hawke v. Euyart,* 30 Neb. 149, 46 N. W. 422; *Whiton v. Snyder,* 54 Hun 552, 8 N. Y. Supp. 119; *Wren v. Bradley,* 2 De Gex & Smales, 49; *Wilkinson v. Wilkinson,* L. R. 12 Eq. 604. See, also, *A. L. I. Restatement, Trusts,* sec. 62 (d) and (e).

From what has been said it follows that we are of the opinion (a) that the chancellor erred in declining to construe the provisions of the third item of the will in question and (b) that the conditions of that item relating to appellant's marital status, both in regard to no longer

living with his wife and with reference to securing a divorce from her, are void as against public policy, and that the bequest is consequently unaffected by such conditions. These conclusions concerning those conditions are in no way affected by the expression used by testatrix in the second paragraph of that item requiring their performance by the time of her decease, for since during the twenty-three days which elapsed between the date of executing the will and death of testatrix there existed no cause entitling appellant to a divorce from his wife, it must be assumed that he could not have procured one. That requirement must, therefore, be regarded as impossible of fulfillment. *Miller, Construction of Wills*, pp. 870, 871; *Ellicott v. Ellicott*, 90 Md. 321, 45 A. 183.

The decree appealed from must be reversed in part and affirmed in part, and the cause will be remanded for decree not inconsistent with the views herein expressed.

> *Decree affirmed in part and reversed in part, and cause remanded for decree in conformity with this opinion, with costs to appellant to be paid by the executors of Anna Louise Fleishman out of her estate.*