Dugans vs. Livingston.

---

---

DUGANS, RESPONDENTS, vs. LIVINGSTON, APPELLANT.

1. The testator's understanding of the words used in his will, ascertained from the will itself must be adopted in construing the will, without resorting to lexicographers to determine what the same words may mean in the abstract: or, to adjudicated cases, to discover what they have been decided to mean under different circumstances.

## APPEAL to Washington Circuit Court.

JOHNSON, for appellant.

1. It is insisted, that the boy Toney did not pass to the plaintiffs, under the third clause of Stephen Dugan's will, but that as to him, Stephen Dugan died intestate.

The operative words in that clause on which the plaintiffs found their claim, are "perishable property." This term is defined under our law as meaning such property as is liable to perish, be consumed, or rendered worse by keeping. Compare sec. 33 and 34 art. II., title "administration." Perishable property the administrator must sell to the highest bidder soon after filing his inventory, first giving three weeks notice. If this be not sufficient to pay debts, he may. in the same manner, sell other personal estate, disposing of slaves last, section 34. Thus, while the statute recognizes slaves as personal property, it clearly distinguishes

Dugans vs. Livingston.

them from "perishable property." All perishable property is personal property, but it is not true *e converso*, that all personal property is perishable property. The laws says that the administrator at his first sale shall sell the perishable property; was it ever heard that he could sell slaves? He must exhaust all the personal property first, even chattel reals and public stocks before he can touch slaves. It is expressly said, slaves shall be disposed of last, section 34. Slaves are a peculiar and distinctive kind of property. They possess a value independent of their value in market. There is a *pretium affectionis*. It was held by this court, in the case of Rennick vs. Chloe, 7 Mo. R. 197, that an act of the Kentucky legislature, authorizing individuals to dispose of their chattels by will, did not authorize them to liberate slaves, the court presuming, that when the legislature designed to embrace slaves in the provisions of a law, they would do so *eo nomine*, and not under the general designation of chattels. This court also, in the case of Clark and wife vs. Henry's adm'r, 9 Mo. R. 345, say that the intention to affect slaves by will, even under the general designation of personalty, should appear manifest and plain before a court could give such language so broad an interpretation. Now it is a rule of construction, applicable to every written instrument, that wherever a word is used which has a fixed and well defined meaning, it shall be presumed, that it is used in that sense; Brown's Legal Maxims, p. 124. But here the case is stronger than the rule, for the common and legal meaning of the words perishable property, is the same, and that meaning is, such property as is liable to perish, be consumed, or rendered worse by keeping. In the absence of any proof of intention to do so, it is submitted confidently, that the court will not adjudge slaves to pass under the words "perishable property."

2. Again: In construing a will, the intention of the testator is the pole star by which the court should be guided, provided no rule of law is thereby infringed; Brown's Legal Maxims p. 122; 4 Kent's Com. p. 534. Now the evidence shows that when this will was made, Stehpen Dugan did not own the child Toney, and that the only slave he owned was the boy Jack. The boy Jack is expressly excepted from the operation of the third clause in the will, but is disposed of in the fourth clause. It is clear, therefore that the testator never intended to dispose of any slaves under that third clause. In the second, he provided that his wife should be entitled to as much of the stock as will do for the support of herself and his four children, Jerry, John, Thomas Cox and Noah George; and after her death or marriage, the stock, with its increase, was to go to his four said children. He then says in the third clause, all the balance of my perishable property, &c. What balance? A balance supposes a whole, and something taken away. Here the stock is referred to as the whole.

So much is to be taken away as will do for the support of his wife and the four boys, and the balance of his perishable property (that is, the balance of the stock before referred to, and from which he gave off to his wife and boys) is to be sold, and the proceeds divided among them for educational purposes. Here, it would seem, if the testator wrote the words perishable property different from their ordinary meaning, he intended them to apply to stock. There appears to be no intention to enlarge the meaning of the word. He seems rather to fear that this term might be construed to apply to his only negro, and therefore he expressly excepts him from the operation of the term. It will be observed that different intentions are manifested in the third and fourth clauses. The perishable property is a fund for the education of his boys, and the hire and sale of Jack is to be their patrimony, in part, to be divided among them when the youngest becomes of age. The third clause was intended to create a fund to school his boys. Now suppose Stephen Dugan had acquired fifty negroes after making the will, if those fifty negroes could pass under the term used in the third clause, they could be sold and applied by the executor to any other purpose than to school them. This would be a fund to endow a college. How much would be needed to educate f our farmer's boys in a plain way? While in the fourth clause of his will, he seems to intend that the proceeds of Jack's hire and sale shall be a start in the world for the boys, when the youngest arrives at twenty-one years of age, yet, in fact, he sells him in his life time. In so doing there was a manifest change of intention so far as his boys were concerned. He saw, perhaps, that it was not just to make them the entire recipients of his bounty, and while

---

---

he didn't change the will he effected his purpose by disposing of the property upon which the will was to operate. He acquires four other negroes after the date of the will, and Toney he acquires, only about 18 months before his death; and he sells all except Toney. Toney was born, much less his property at the date of the will, and having adeemed the legacy of Jack, which is to say that he did not intend to die intestate as to Toney. Whether he intended it or not I say, that such is the construction which the law will draw

Justice forbids the conclusion contended for by the plaintiffs. The court must enlargo the well understood meaning of the words "perishable property," to let the plaintiffs in. In this way, by a great strain, I may say by legal violence, the court gives a man's property to a part of his children—to his boys who are able to take of themselves; while, if the usual, ordinary and legal meaning be affixed to the terms, the property goes to all his children, and his widow, without distinction of sex, share and share alike.

Frissell, for respondent,

For the respondent it is insisted, that it was the intention of Stephen Dugan, the testator, to dispose of all his property by his will.

That the intention is sufficiently clear from the wording of his will.

The third clause of the will show what the testator understood by *perishable* property. It is the same that the lawyers would call *personal* property. From the perishable property he excepts the slave Jack, which was all the slave property he then owned.

It is fair to infer, that he would have classed Toney in the same manner he did Jack, among his perishable or personal property. He may or he may not have reserved him from sale, if he had owned him at the time of making his will. His executor, in his construction of the will, reserved Toney from sale. Whether he did right or wrong, in so doing, is not material in this case. We think, that upon a fair construction of the will, Toney should be considered perishable property in the language of the will and pass to the respondents by the third clause, or should pass to them by the fourth clause of the will which gives Jack and his hire to them.

If the property in Toney did not pass by one or the other of these clauses, then all of Dugan's property did not pass by the will, and Toney would pass to the heirs at law.

This last construction would be at war with the provisions of his will, in reference to his daughter Matilda, beyond all question. And it would also seem to defeat the intention of the testator, so far as it modified the disposition of his property.

Ryland, J., delivered the opinion of the court.

Jerry, John, Thomas Cox and Noah George Dugan brought their suit, in the circuit court of Washington county, against Thomas R. Livingston. The plaintiffs were children of Stephen Dugan, deceased, and the suit was for a negro boy named Toney. The defendant claimed under Catharine Dugan, (the widow of said Stephen Dugan, deceased) one sixth part of said negro. Matilda Maness and her husband, Pleasant Maness, on their application, were made parties to the suit, and filed their answer, claiming one sixth or a child's part of said slave.

The following facts appear by the record: Stephen Dugan made his will on the 17th of September, 1839, and died in January 1843. At the date of his will, he owned but one slave, and that was the boy Jack, mentioned in the will; he also owned cattle, horses, hogs, sheep, oxen,

&c. That after the date of the will, he acquired a negro woman and child, which, with the boy Jack, he sold. He then purchased another woman and child; that he sold the woman and kept the child, and this child is the boy, Toney, sued for. That Stephen Dugan left five children—the four sons, the plaintiffs, and Matilda Maness, and that Catharine Dugan is his widow. The will of Stephen Dugan is as follows, leaving out the formal commencement: 1st. My wife Catharine will enjoy the use of my place, where I now live in Richmond township, county and State aforesaid, containing about four hundred and forty acres more or less, for as long as she remains a widow.

"2d. My wife Catharine will be also entitled to as much of the stock as will do for the support of my four children and herself, that is to say, Jerry, John, Thomas Cox and Noah George, the said stock will go to my four children, with their increase, after the death or marriage of my said wife.

"3d. All the balance of my perishable property, excepting my negro boy Jack, will have to be sold according to law, and the proceeds from it equally divided amongst my four first mentioned children, that is, for their own use, to school them, and then after they are of age divided equally.

"4th. My negro boy Jack is to be hired out, until my youngest boy, N. George, becomes of age, and then he will be sold, and the money divided equally between my four children; the wages of the boy will also be for their use.

"5th. That I give to my daughter Matilda five dollars cash out of my estate.

"6th. After my wife Catharine's death or marriage, all my land and farm first mentioned is to be divided equally amongst my four children, Jerry, John, Thomas Cox and Noah George.

"7th Appoints executors. Signed and sealed 17th September 1839."

The question in this case is, did Stephen Dugan die intestate, as to the boy Toney, and if so, will Toney belong equally to all the children and the widow, or whether he passed to the plaintiffs in the 3d clause of the will under the terms "perishable property," and so would belong to the four boys, in exclusion of the widow and the daughter? The plaintiffs maintain the latter proposition and the defendant the former. Several instructions concerning the construction and rules for interpreting wills were asked by the defendants, some of which were given and others refused, but as the will must be construed by this court, it is not necessary to insert here the instructions.

The case was tried by the court, and verdict and judgment given

for the plaintiffs. The defendants moved for a review and new trial, which was overruled, and the case comes now before us by appeal.

Nothing is said about the right or ability of the plaintiffs to maintain this action, or about the settlement of Dugan's estate finally, or the payment of his debts. These matters were not brought before the consideration of the court below, nor will this court notice them further.

The words "perishable property" are not generally used in our legislation, as including slaves: "personal property" is the phrase generally intended to embrace them, when they are not otherwise mentioned expressly as "slaves" or "negroes." See the act concerning administrators and executors in 1835 and 1845, passim. But in the will before us, it is plain, that the testator supposed these words "perishable property" did include and embrace his negroes, for he expressly excepts "Jack," the only slave he then owned, from the operation of the third clause of his will, by which he directs, that "all the balance of my perishable property excepting my negro boy Jack, will have to be sold, according to law, &c." Now the exception of the negro boy Jack, in this clause, forces on my mind irresistably, the meaning that the testator gave to the words perishable property: He believed that the negro Jack would be included under these words, and therefore he excepts him from their operation. Nor is there any positive legal violation in giving this meaning to these words. This, then, being the testator's understanding of the words "perishable property," it will be adopted by this court in construing the will, "without resorting to lexicographers to determine what the same words may mean in the abstract: or, to adjudicated cases to discover what they have been decided to mean under different circumstances." See Carnagy & Wife vs. Woodstock and Mackey, 2 Munford, 239.

It is not the opinion of this court, that the boy, Toney, can be made to take the place of Jack and be disposed of under the will as Jack would have been, had he remained the testator's at his death instead of Toney; nor do we consider that the testaror died intestate as to the boy Toney. Having made his will, it would be with great reluctance that the courts would declare he died intestate, as to any property that can be reasonably included under the provisions and by the terms of the will. According to our understanding of the use of the words "perishable property," made by the testator in this will, the negro boy Toney passed with the perishable property to his four sons, the plaintiffs.

This being the construction placed upon the will by the court below,

we see no cause to reverse the judgment. The other judges of the court concurring, the judgment below is affirmed.