NORA F. SNORGRASS, Respondent, v. A. J. THOMAS, Trustee of the Estate of WILLIAM P. SNORGRASS, Deceased, Appellant.

**Kansas City Court of Appeals, October 7, 1912.**

1. **WILLS: Intent of Testator.** In the construction of wills the cardinal rule is to give effect to the true intent and meaning of the testator.

2. **————: ————.** This can be best ascertained by the courts by putting themselves in the place of the testator and reading all his directions therein in the light of his environment at the time the will was made.

3. **————: ————.** In order that the court may place itself as near as possible in the place of the testator and read his will from the same standpoint from which it was written, the circumstances surrounding the testator, the subject-matter of the devise, and the persons to be benefited, may be considered in order to determine the objects of his bounty.

4. **————: ————.** The words "shall lose her husband" are construed to mean, in this case, a cessation of the marital relation whether that event should be occasioned by the death or divorcement of the husband.

5. **PRACTICE, TRIAL: Defect of Parties: Demurrer.** A defect of parties to an action must be raised by demurrer, or answer, or the point is waived.

Appeal from Moniteau Circuit Court.—*Hon. John M. Williams,* Judge.

AFFIRMED.

*W. F. Quigley* and *Jeffries & Corum* for appellant.

(1) By filing suit and procuring a divorce from her husband, plaintiff did not lose her husband within the meaning and intention ⌐⌐ her father, as expressed in his will. Shafer v. Senseman, 125 Pa. 310; Bank v. Buhl, 129 Mich. 193; Sovern v. Yorn, 20 Pa. 100; Thorne v. Marfflin, 100 Pa. 515; Vorrman v. Jenkins, 12 Wend. 563. (2) A testator's understanding of the meaning of the words used in his will will be adopted without resorting to lexicographers to determine what the same words mean in the abstract, or to adjudicated cases to discover what they have been decided to mean under different circumstances. Reinders v. Coppelman, 94 Mo. 343; Hall v. Stephens, 65 Mo. 670; Douglas v. Livingston, 15 Mo. 230. (3) In construing a will the intention of the testator, if legal, governs. Murphy v. Carlin, 113 Mo. 117; Redman v. Barger, 118 Mo. 573; Watson v. Watson, 110 Mo. 170; Long v. Timms, 107 Mo. 510; Chew v. Keller, 100 Mo. 369 and 373.

*D. N. Bybee* and *R. M. Embry* for respondent.

(1) The will says "if my said daughter shall lose her husband, J. Denzil Bowles," etc., then, that is, at that time, "said half held by said trustees shall be paid and handed over to my beloved daughter," etc. This clause vested in the daughter the absolute estate when she lost her husband. 28 Am. & Eng. Ency. Law (2 Ed.), p. 128. (2) The next clause in the said seventh division says, "or if my said daughter shall have a child," etc. This evidently refers back to the time she lost her husband, and means if she had a child at that time. It is admitted she did not. The word "then" refers to the losing of her husband, and also requires she have a child at that time to prevent the vesting of the estate in the daugh-

ter. 28 Am. & Eng. Ency. Law (2 Ed.), p. 128. (3) The seventh clause of said will provides that if testator's daughter "lose her husband,"· etc., then the estate shall vest in her absolutely. If the contingency of "losing her husband happened" the estate vested. If the estate vested under this clause, then such estate cannot be limited or changed by any subsequent clause in the will. Roth v. Rauschenbusch, 173 Mo. 582; Stratton v. McKinnie, 62 S. W. 636. (4) The law favors the vesting of estates. Therefore if respondent "lost her husband" within the meaning of the will, the estate at that time could only vest in the daughter, respondent herein. Subsequent provisions in the will, will not prevent vesting of estate. Moor., Admr., v. Sleet, 68 S. W. 642.

JOHNSON, J.—This is an action in equity instituted in the circuit court of Moniteau county August 1, 1911, against the trustee of an estate created by the last will of William P. Snorgrass who died testate in that county in January, 1908. Plaintiff who was the daughter of Snorgrass and one of the beneficiaries of the trust estate alleges that the purpose of the trust has been accomplished and prays that it be dissolved and the trustee ordered to pay to plaintiff her share of the estate. The principal defense is that the object of the testator, as expressed in the will, has not been satisfied and that the trust must be continued until it is satisfied. The court, after hearing the evidence, adopted plaintiff's view of the issues raised by the pleadings and rendered judgment in accordance with the prayer of the petition. Defendant appealed.

There is no serious controversy over the facts of the case. Shortly after the death of plaintiff's father his will was duly probated, letters testamentary were issued and the estate was administered in accordance with the will. The present action, which was not be-

gun until after the close of the administration, involves the interpretation of the following paragraphs:

(1). "I direct my executors to erect a modest tombstone upon my lot wherein my body shall be buried after my death, at a reasonable cost, and the lot wherein I shall be buried shall be kept in respectable appearance and order for the period of ten years after my death, at a cost of not exceeding five dollars per year."

(5). "It is my express will and I hereby convey, transfer and assign to Jacob Hainen, Jr., and William P. Kuttenkuler all of my personal property, consisting of notes with personal security for money loaned, notes for money loaned and secured by mortgages and deeds of trust, and other securities and investments of which I may be possessed at the time of my death, as well as all cash I may be entitled to at the time of my death, in trust, to hold for the purposes mentioned in this my last will and testament; and for the benefit and use of the legatees of my estate and the same to be cared for, held in trust, protected and loaned upon good first class personal or real estate security and the interest thereon to be collected by said trustees once a year and oftener if found practicable and desirable, and the said trust funds to be paid out as directed in this my last will. Said trustees, for their attention, care and management of the personal property herein conveyed to them in trust, shall be paid at the rate of not exceeding one per cent per annum on the total amount so conveyed to them in trust."

(6). "It is my will that there be paid out of the trust estate so created by the fifth paragraph of this will and hereby placed in the hands and put under the watchful care and management of the said Jacob Hainen, Jr., and Wm. P. Kuttenkuler as trustees, the following sums of money annually to my said wife, Frances P. Snorgrass, four hundred dollars annually, commencing from the date of my death, so long as

my said wife shall live, both of said payments to cease upon the death of my wife; and then the income shall be paid to my beloved daughter, Nora F. Bowles, on one-half of said trust fund during her natural life, less the charge for care, and subject to the other conditions of this my last will.''

(7). ''It is my will that upon the death of my beloved wife that my estate shall be equally divided between my daughter, Nora F. Bowles, and my wife's sister, Lucy A. Carpenter, they two to share equally, the one-half to be paid over to said Lucy A. Carpenter in such securities as are in possession of my said trustees at the date of my wife's death, the other half and the income therefrom to be continued in the possession of said trustees and except the percentage allowed to such trustees and interest arising therefrom to be paid over to my said daughter, Nora F. Bowles, annually, commencing from the date of the death of my said wife, and it is further my will that if my said daughter shall lose her husband, J. Denzil Bowles, then said half held by said trustees of my said estate shall be paid and handed over to my beloved daughter, Nora F. Bowles, absolutely, to do with as she may desire, or if my said daughter shall have a child of her body, then it is my will that said half of my said estate shall continue to be administered in trust for my daughter during her lifetime and upon her demise the same shall be paid over to said heir of her body, if it shall have reached the legal age of maturity, but such estate shall only be paid over to an heir of her body; and it is further my express will and desire that if neither of the last two conditions occur during the lifetime of my said daughter, Nora F. Bowles, then said one-half interest upon the death of my said daughter shall be paid over to my brothers and sisters, if living, and if not then living, their several shares herein provided for, if living, shall be paid over to the children of their respective bodies and to the heirs

of their bodies under the laws of descent and distribution, and it is further my express will and desire that if my wife shall survive my said beloved daughter, Nora F. Bowles, and if said daughter shall not leave an heir of her body, then upon the death of my beloved wife, said trustees shall pay over to my said brothers and sisters and to their bodily heirs, as hereinbefore set out, the one-half of my estate."

The persons nominated as trustees in the fifth paragraph refused to act and defendant was appointed in their stead. He took possession of the trust estate and has administered it in accordance with the provisions of the trust. At the time of the death of Snorgrass plaintiff was the wife of J. Denzil Bowles. No children were born of the marriage. In 1911, plaintiff brought an action for divorce in the circuit court of Moniteau county and in May of that year was granted a divorce and the restoration of her maiden name. In May, 1910, the executors of the will made their final settlement in the probate court and were discharged. In the same month they delivered the trust estate into the hands of defendant.

Plaintiff bases her alleged right to the immediate possession of one-half of the trust estate on the ground that in obtaining a final decree of divorce from her husband she brought herself within the purview of the seventh paragraph of the will which entitled her to a moiety of the trust estate as her absolute property. The language of the will directly called in question by this contention is "that if my said daughter shall lose her husband, J. Denzil Bowles, then said half held by said trustees of my said estate shall be paid and handed over to my beloved daughter, Nora F. Bowles, absolutely, to do with as she may desire, or if my said daughter shall have a child of her body, then it is my will that said half of my said estate shall continue to be administered in trust for my daughter during her lifetime and upon her demise the same shall

be paid over to said heir of her body, if it shall have reached the legal age of maturity. . . ."

Defendant argues that properly construed the words "shall lose her husband" refer to the possible event of the death of plaintiff's husband prior to her own and do not include the event of a legal separation of husband and wife caused by the voluntary act of the latter.

In the construction of wills the cardinal rule is to give effect to "the true intent and meaning of the testator." [Section 583, Revised Statutes 1909; Murphy v. Carlin, 113 Mo. l. c. 117; Redman v. Barger, 118 Mo. l. c. 573.] And as is well said in Murphy v. Carlin, supra, "The true intent and meaning of the testator can be best ascertained by the courts and those concerned in the execution of wills by putting themselves, so far as may be, in the place of the testator and reading all his directions therein contained in the light of his environment at the time it was made. When that intent and meaning can be thus clearly ascertained, then all technical rules and adjudicated cases in other jurisdictions that would stand in the way of its execution must be disregarded."

The will must be read as a whole in the light of the circumstances surrounding the testator and where the lexicographic definition of words used in the instrument would be out of harmony with the true intent of the testator as expressed and explained in the context the intent, if legal, must govern and technical definitions must give way. "The testator's understanding of the meaning of the words used in his will, will be adopted 'without resorting to lexicographers to determine what the words may mean in the abstract, or to adjudicated cases to discover what they have been decided to mean under different circumstances' (Dugans v. Livingston, 15 Mo. 230); and in order that the court may place itself as near as may

166 Mo. App.—39

be in the place of the testator and read his will from the same standpoint from which it was written, the circumstances surrounding the testator, the subject-matter of the devise, and the persons to be benefited may be considered in order to determine the objects of his bounty." [Reinders v. Koppelman, 94 Mo. l. c. 343.]

With these rules before us we revert to the will and to the circumstances of its execution to ascertain the true intent of the testator respecting the bequest made for the benefit of plaintiff, his daughter. As the death of the testator's wife preceded his own death the only bequest that fell under the operation of the trust created in the fifth paragraph of the will was that intended for the benefit of plaintiff and the obvious purpose of the testator, clearly expressed in the seventh paragraph 'was to continue that trust during the existence of the marital relations of plaintiff and her husband, J. Denzil Bowles, and if a child should be born of that union to continue the trust until such child should become of legal age, notwithstanding the end of said marital relation or the death of plaintiff might precede that event. That the testator intended only to make provision for a child born of the existing marriage and not for the issue of any possible subsequent marriage of his daughter is evidenced by the provision terminating the trust in the event of her losing her husband while still childless. No child having been born of the marriage it is conceded that had plaintiff lost her husband by his death that event, *ipso facto,* would have ended the trust and entitled her to receive the bequest as her absolute property. What meaning did the testator intend should be given the expression "shall lose her husband, J. Denzil Bowles?" As applied to property the word "lose" ordinarily refers to an involuntary, not a voluntary, deprivation. No man may be said to have lost that which on his motion he abandons or

resigns. [See cases cited in 5 Words and Phrases, 4237, *et seq.*] And in common speech the expression "has lost his wife" or "has lost her husband" generally is understood to refer to a loss by death and not to the voluntary divorcement of the spouse. But in the light of all of the expressed purposes of the will, we think the testator intended the term should be given a broader meaning. Manifestly a lack of confidence in plaintiff's husband inspired him to create a trust of the bequest made for her benefit that effectually would protect the estate against the possible inroads of the husband. Doubtless he felt that so long as the marital relation continued it would not be safe to allow his daughter the full possession of her inheritance lest she be deprived of it in some way by her husband. With the end of the childless marriage would come the end of the power of the husband feared by the testator. The very fact that an expression susceptible of a more comprehensive meaning than that referring only to the possible death of the husband was used by the testator, taken in connection with the purpose to be served by the trust, convinces us that the testator intended the trust should cease with the cessation of the marital relation whether that event should be occasioned by the death or divorcement of the husband.

But it is argued by defendant that such interpretation would render the will void on the ground that the testator in holding out an inducement to plaintiff to procure a divorce violated a well known rule which forbids outside interference with the marital relation. A contract designed to promote or facilitate divorce, being opposed to the policy of the law, is void. [Blank v. Nohl, 112 Mo. l. c. 169.]

The law zealously guards the marriage relation and if we thought the will in hand was designed to hold an inducement to plaintiff to obtain a divorce from her husband we would condemn the provision

creating the trust as *contra bonos mores*. But we find no evidence in the will of such intention. Certainly a father acts within the scope of his parental right in protecting a devise, or bequest, to his child against the possible depredations of her husband and in providing for the vesting of the absolute estate in the chld on the cessation of the cause of the protective measures, that is to say, on the termination of the marriage relation, the father should be deemed to have been actuated by the praiseworthy motive of making suitable provision for possible future contingencies rather than by the reprehensible motive of attempting to impair the domestic happiness of his child by inciting her to a separation from her husband.

Point is made by defendant of a defect of proper parties because of the failure of plaintiff to join the remaindermen as defendants. The point was not raised by demurrer or answer and, therefore, was waived. [Section 1804, Revised Statutes 1909.]

The contention of defendant that the first paragraph of the will required the continuance of the administration of the estate of the decedent during a period of ten years, if well founded, is immaterial to the issues of the present action. Defendant received and holds the trust estate as trustee of an express trust. In the absence of a contrary showing we must presume that adequate provision was made by the executors for the performance of the duty imposed by the first paragraph before the distribution of the estate and that the bequest received by defendant was not burdened with that duty.

We conclude that the learned trial judge properly decided the case and, accordingly, the judgment is affirmed.

All concur.