JOHN P. RANSDELL

*v.*

LOUISA BOSTON *et al.*

*Opinion filed April 21, 1898.*

1. EVIDENCE—*parol proof of testator's declarations inadmissible.* In construing wills, parol testimony is competent to prove the circumstances surrounding the testator, the condition of his property, his relations to his family, etc., but not to prove his declarations before or after executing the will.

2. WILLS—*when condition regarding divorce is not void, as against public policy.* A condition in a will whereby the life estate given the testator's son is to be enlarged to a fee in case he should become divorced from his then wife, will not be held void, as against public policy and good morals, where for several years prior to the execution of the will the son and his wife had lived apart while divorce proceedings were pending between them.

3. SAME—*condition precedent is operative, if broken, though void.* A condition in a will whereby the life estate given the testator's son is to be enlarged to a fee in case he should become divorced from his then wife, is a condition precedent, and, even were it held void, would, if broken, be operative and prevent the fee from vesting.

WRIT OF ERROR to the Circuit Court of Morgan county; the Hon. CYRUS EPLER, Judge, presiding.

Plaintiff in error filed his bill in the court below to set aside certain conditions in the last will of his father, Eli C. Ransdell. The facts alleged in the bill material to a decision of the case are as follows: Eli C. Ransdell died testate August 28, 1880, leaving him surviving Ann Ransdell, his widow, plaintiff in error, John P. Ransdell, his son, and Louisa Boston, his daughter, the latter having a son, William Boston, and a daughter, Olga May Robinson. On July 10 prior to his death he executed in due form of law his last will and testament, which was duly admitted to probate. By the first clause of that will he directed the payment of all his just debts. By the second he gave to his wife lot 161, in Jacksonville, Illinois, for life, and at her death to be disposed of as afterwards

stated; and also certain personal property to be owned by her absolutely. By the third he gave the daughter, Louisa, eighty acres of land in Morgan county for life, and at her death to go to her children in equal parts; also the benefit of $1000 for her life, the same to go to her children at her death, in equal parts. The fourth and fifth clauses, being those upon which the bill is based, are as follows:

"*Fourthly*—I give, devise and bequeath to my executors, as trustees, as hereinafter stated, the west half of the south-west quarter of section number twenty-nine (29), the east half of the east half of south-east quarter of section number thirty (30), and the west half of the east half of the south-east quarter of section number thirty-one (31), all in township fifteen (15), north, and range nine (9), in Morgan county, Ill., being one hundred and sixty (160) acres, in trust, however, to permit my son, John P. Ransdell, to take and apply the rents, issues and profits of the same, or to use and occupy the same without rent, if he shall so elect, until such time as he, the said John P. Ransdell, shall become sole and unmarried, and upon the happening of that event my said executors, or the survivor of them, trustees as aforesaid, shall release and convey the title to said lands to the said John P. Ransdell in fee; but if the said John P. Ransdell shall die never having had the bonds of matrimony dissolved between him and Julia Ransdell, his present wife, and he shall die childless, then said lands so bequeathed in trust, as last aforesaid, shall be held in trust for the other devisees under this will; but if the said John P. Ransdell shall die having issue, the said real estate last aforesaid shall belong to said issue in equal parts, excluding the said Julia E. Ransdell from any and all interest whatever in the same. I enjoin upon my son, John, as a duty, that he furnish his mother the necessary fire-wood, and such articles from the farm as she may need, and that he carefully look after her affairs so long as she may live.

"*Fifth*—All and singular the remainder of my said real and personal estate I will and bequeath to my executor, William Ransdell, in trust, however, for the following purposes, to-wit: to have, hold and manage and control the same for the use and benefit of my wife, Ann Ransdell, so long as she shall live. Said trustee shall collect the interest annually on the moneys invested, and pay over the same, less the necessary costs and expenses of managing the same; and the rents and profits of all my real estate not specifically devised shall be paid over to her, or for her use, during her natural life. At the death of my wife, Ann Ransdell, the principal of the fund so directed to be put at interest for her benefit during her life, and all the real estate devised to her for life and in trust for her benefit during life, shall be held by my surviving executor in trust for the use and benefit of the said John P. Ransdell and Louisa E. Boston, in equal parts, so that they shall share equally in the rents, issues and profits of the same during life. If the said John P. Ransdell shall during his life be legally absolved from the bonds of matrimony whereby he is now joined in wedlock to Julia Ransdell, then upon the happening of such event, but not before the death of Ann Ransdell, as aforesaid, the one-half of the residue of my estate hereinbefore devised to my wife for her life or in trust for her for life, shall immediately vest in the said John P. Ransdell absolutely. If the said bonds of matrimony shall be dissolved between the said John P. Ransdell and Julia Ransdell during the life of Ann Ransdell, said dissolution is not to affect, in any way, the devise for life to my wife, Ann Ransdell. If the said John P. Ransdell shall not be dissolved from the bonds of matrimony, but remain bound in wedlock to his now wife at the time of his death, then the one-half of said residue of my estate, at the death of my wife, Ann Ransdell, shall go to and vest in his, the said John P. Ransdell's, issue, if any such there be, to the exclusion of the said Julia E. Ransdell, his present wife.

If the said John P. Ransdell shall die without issue, then the said one-half of said residue of my estate, after the death of my wife, Ann Ransdell, shall be held by the said William Ransdell, my surviving executor, to and for the use of the said Louisa E. Boston during her natural life, and after death to her children, in equal parts, and the other or remaining half of the residue of my said estate, after the death of my said wife, Ann Ransdell, shall be held by my said surviving executor for the use of the said Louisa E. Boston, with the right for her to receive, use and apply the annual income arising from the same for and during her life. At her death the same shall vest in the children of her, the said Louisa E. Boston, in fee, in equal parts."

The sixth clause empowered his executors named to make, execute and deliver any and all deeds necessary to be executed in order to carry into complete effect all the provisions of the will, and by the seventh he nominated his brother, William Ransdell, and his wife, Ann Ransdell, to be his executors.

It is alleged in the bill that the testator was unduly prejudiced against the wife of complainant, Julia E. Ransdell, and was desirous that he should procure a divorce from her, and being so influenced, provided in the fourth clause of his will that complainant should have the occupancy, use, rents and profits of one hundred and sixty acres of land for life or until the dissolution of said marriage relation between himself and his wife, when said lands should be by the executors conveyed to him in fee; but if he should die without issue, never having had said marital relations dissolved, then the land should descend to his sister, and at her death to her children. By an amendment to the bill it was further alleged: "That said testator, by the fifth clause of the said will, also devised and bequeathed to your orator one-half of certain moneys and land, at the expiration of the life estate of his widow, Ann Ransdell, to be owned and enjoyed absolutely and

in fee simple, conditioned upon the dissolution of the marriage relation existing between your orator and the said Julia E. Ransdell; but if said marriage relation should not be dissolved, then your orator should only have the use and income of the same for life, and at your orator's death, in default of issue, the same should descend to your orator's sister, Louisa Boston, and at her death to her two children." It is then alleged in the bill that the provisions in said fourth and fifth clauses, being intended by the testator to induce the complainant to secure a divorce from his wife, are void in law, being contrary to good morals and public policy, and, as such, should be so held and decreed. It then sets out that Louisa Boston is the mother of the two children named, who are tenants in fee as remainder-men under the provisions of the will, in the event complainant should die without issue, not having been divorced from Julia E. Ransdell; that complainant is not the father of any child or children living, or of any which have been born since the death of the testator.

Louisa Boston, her children, and the husband of the daughter, Joel Robinson, together with John A. Ayers, administrator *de bonis non* of the estate of the testator with the will annexed, were made parties defendant. The prayer is, that upon a hearing "the provisions of said will requiring your orator to procure a divorce from his wife as a condition precedent to the enjoyment of the fee of the one hundred and sixty acres of land be decreed to be absolutely null and void, and that the title to said land be declared to be vested in your orator in fee;" and by an amendment to the prayer, that he be decreed "the owner in fee of the property devised and bequeathed to him by the fifth clause of said will, subject to said widow's life estate, free from the said illegal and immoral provision." There is also a prayer for general relief.

Louisa Boston, her two children and Joel Robinson filed a general demurrer to the bill, which was overruled,

and leave given to answer. By their joint and several answer they admit the allegations of the bill as to the execution of the will and death of the testator; deny that the testator was unduly prejudiced against Julia E. Ransdell, or that he desired the complainant to procure a divorce from her, or that he intended, by the terms of his will, to induce the complainant to secure a divorce; deny that the provisions of the will are contrary to good morals or public policy, but aver that the same are just and in accordance with sound policy and good morals, and valid and binding upon the complainant and all others; that the claims of the complainant are stale, and are and should be barred by lapse of time; that the uses and purposes for which said trust was created by the will were and are lawful, and that said devise to said trustees was and is a valid devise, and the court has no authority to divest said trustees of the title so vested by said devise, and deny any and all other matters not specifically admitted or denied.

To this answer a general replication was filed and the cause referred to a master to take proofs. Upon the coming in of his report the same was approved and a decree entered dismissing the bill for want of equity, and from that decree this writ of error is prosecuted.

LYMAN LACEY, Sr., and WILLIAM A. CRAWLEY, for plaintiff in error.

JOHN A. BELLATTI, for defendants in error.

Mr. JUSTICE WILKIN delivered the opinion of the court:

As will be seen by the foregoing statement, the relief prayed in the bill is based upon the allegation that the condition named in the fourth and fifth clauses of the will of Eli C. Ransdell, upon which the complainant should become the absolute owner of the property mentioned, is contrary to good morals, against public policy, and there-

fore void. In support of the proposition, the rule announced in 1 Story's Eq. Jur. sec. 291 *a*, and authorities there cited, 2 Redfield on Wills, 293, *Conrad* v. *Lowry*, 33 Mich. 78, and Pomeroy's Eq. Jur. sec. 933, note 1, is relied upon. The language of Judge Story is (having spoken of the law as to devises and bequests in restraint of marriage): "So, also, conditions annexed to a gift the tendency of which is to induce husband and wife to live separate or be divorced, are, upon grounds of public policy and public morals, held void." But he says (sec. 291 *e*): "This whole subject, as to what conditions in restraint of marriage shall be regarded merely *in terrorem* and so void, and what ones are valid, is certainly, both in England and in this country, involved in great uncertainty and confusion." And in section 291 *d*: "The question as to what conditions affecting marriage are valid must depend upon the circumstances of each particular case, and will be very materially affected by the consideration how far the condition was one fairly applicable to the relation of the parties and the peculiar views and situation of the donor and donee."

While it must be admitted that the language of the testator used in these clauses of his will impresses one with the belief that he desired his son to obtain a divorce from his wife, and that he conditioned his gift to him with a view to encourage that result, there are certain facts and circumstances which go far to sustain the view that his purpose was simply to secure the gift to his son in the manner which, in his judgment, would render it of the greatest benefit to him in view of the relations then existing between him and his wife. They had for several years prior to the execution of the will been separated. A divorce suit between them had then been pending for more than two years, in which they each alleged statutory grounds against the other for divorce, and they continued such divorce proceedings and lived separate and apart from each other for many years after the death of

the testator.    Certainly, it cannot be said that the condition tended to encourage either the separation or the bringing of a divorce suit, both having taken place long prior to the execution of the will.    We do not regard as competent the extrinsic evidence of the declaration of the testator, made some two years prior to the execution of the will, to the effect that he thought as the son and his wife had separated they had better remain so, and if they lived together he would disinherit the son, and that he could not do much for the son while he lived with his wife.    The general rule is, that in the construction of wills parol testimony is competent to prove the circumstances of the testator at the time, the condition of his property, his relations to his family, etc., but never to prove his declarations prior to or after the execution of the instrument.    The testimony, however, was of no controlling importance.    He did not disinherit his son upon condition that he should live with his wife or should obtain a divorce from her.    He simply made one provision for him in case they were not divorced, and another if they were.

While it is of the first importance to society that contract and testamentary gifts which are calculated to prevent lawful marriages or to bring about the separation or divorcement of husbands and wives should not be upheld, it is no less important that persons of sound mind and memory, free from restraint and undue influence, should be allowed to dispose of their property by will, with such limitations and conditions as they believe for the best interest of their donees.    On the whole case, we are inclined to the view that the condition in this will should not be held as contrary to public policy and void.    This view is in harmony with the cases of *Cooper* v. *Remsen,* 5 Johns. Ch. 159, *Born* v. *Horstman,* 80 Cal. 452, and *Thayer* v. *Spear,* 85 Vt. 327.    It is true that the force of the reasoning in these cases is somewhat weakened, as applied to this case, by the fact that there the gift

was to daughters, whereas here it is to a son; but the principle involved is the same.

We do not, however, consider the foregoing conclusion as essential to an affirmance of the decree below, for the reason that, even if the condition should be held void, complainant is not entitled to the relief prayed, on the facts alleged in his bill and the proof made upon the hearing. It is said by Pomeroy in his Equity Jurisprudence (vol. 2, sec. 933 *b*): "It is ordinarily said that all conditions annexed to gifts which prohibit marriage generally and absolutely are void and inoperative. This, however, is a very inaccurate mode of statement, since a condition precedent annexed to a devise of land, even if in complete restraint, will, if broken, be operative and prevent the devise from taking effect." And in note 1 to the same section the rule is thus stated: "In devises and other gifts of real estate, courts of equity will follow the rules of the common law concerning the operation of conditions generally, and their effect upon the vesting and divesting of estates. In gifts of real estate, therefore, when a condition in restraint of marriage is precedent and is broken, it prevents the estate from vesting at all, whether the restraint be absolute or partial and whether there be a gift over or not. When the condition is subsequent and void it is entirely inoperative, and the donee retains the property unaffected by its breach."

We do not understand counsel for plaintiff in error to question the correctness of the rule thus stated. It is contended, however, that the condition here is subsequent, and not precedent. This position is clearly untenable. By the express language of the will the absolute ownership of the property was only to vest in the donee upon performance of the condition. In other words, by its express terms it is a condition precedent and the bill designates it as "a condition precedent." An attempt is made to construe it into a condition subsequent, upon the theory that the trust created in the executors is a mere naked

or passive trust, and therefore, the condition being void, the title passed immediately to plaintiff in error, under section 3, chapter 30, of our statute entitled "Conveyances," and that the limitation over, in case he died childless, to "the other devisees under the will," is void for uncertainty. It is clear that the trust is not a naked one. (*Kirkland* v. *Cox,* 94 Ill. 400; Perry on Trusts, sec. 200; Hill on Trustees,—4th Am. ed.—376.) We are unable to see upon what reasonable grounds it can be said the devise over is uncertain. It seems clear that even if the condition named in the fourth clause should be held void, the title in fee to the lands therein described could not vest in plaintiff in error, the condition being precedent to the vesting of such title and the devise being of realty.

The same is true as to any real estate devised by the fifth clause. But it is insisted that as to any personalty disposed of by that clause (the condition being void) the ownership in plaintiff in error would become absolute, whether the condition was precedent or subsequent. It is true the distinction between bequests of realty and personalty insisted upon exists; but we are unable to agree with counsel that such distinction can be availed of by the complainant below upon the allegations of his bill and the proof made in support thereof. In the first place, in no event can he have any right or title to the property, personal or real, mentioned in the fifth clause until the death of his mother, Ann Ransdell. She is still living, and, of course, his death may occur prior to hers, and therefore his present interest is, at most, a mere expectancy. But aside from this consideration, the allegations of the bill are entirely too vague and indefinite to support a decree vesting any title, present or future, in personal property devised by the will, and certainly there is no proof in the record to authorize such a decree.

We think the circuit court properly dismissed the bill at complainant's costs, for want of equity, and its decree will accordingly be affirmed.     *Decree affirmed.*