In the Matter of the Accounting of WILLIAM J. DUGAN et al., as Trustees under the Will of HARRIS T. DUNBAR, Deceased.

Surrogate's Court, Erie County, June 20, 1947.

*Cook and Cook* for petitioners.

*Williams & Sawyer* for Margaret Callin, respondent.

*Ralph J. Radwan,* special guardian for infants, respondents.

Paul, S. There has been presented to me a petition by William J. Dugan and Raymond W. Wattles, Sr., the testamentary trustees under the last will and testament of Harris T. Dunbar, deceased, to construe and determine the validity, force and legal effect of the provisions of paragraph " Fourth " of the said will.

In his will, the testator made certain specific bequests and left the rest and remainder of his estate, one fourth outright to his widow, one fourth outright to his daughter, Doris Dugan, and one fourth outright to his daughter, Lucilla Wattles.

The fourth share, totaling nearly $100,000, was set up in trust for the benefit of his daughter, Margaret Callin. The trustees were directed in paragraph " Fourth " of the will as follows: " * * * and said trustees shall pay the income derived therefrom either monthly or quarterly, at their discretion, to my daughter, Margaret Callin, as long as her husband, Ralph Callin, shall live and continue as her husband. If her said husband, Ralph Callin, shall predecease her, or if the marriage of the said Margaret Callin and Ralph Callin should be dissolved or terminated in any other way except by the death of the said Margaret Callin, then the corpus of this trust, both principal and increment, shall be paid over to said Margaret Callin outright and in fee absolutely."

The trustees have petitioned this court for a construction of the will setting forth that on September 30, 1946, in the District Court of the State of Colorado, a final divorce decree was granted to Margaret Callin, the principal beneficiary under this trust, against her husband, Ralph, and that such final decree of divorce constitutes a termination or dissolution of the marriage of said Margaret and Ralph Callin within the provisions of the terms of paragraph " Fourth " of the will of Harris T. Dunbar, deceased. They petition that said trust be declared ended and that the corpus of the trust, both principal, increment and accrued income, be paid over to Margaret Callin for her own use outright and in fee absolutely. The moving papers do not contain any recital as to the acquiring of jurisdiction by the court granting the divorce over the defendant, Ralph Callin, nor does it show the ground upon which the decree is predicated.

The special guardian of the children of Margaret and Ralph Callin, appointed by this court, has challenged any construction of the will under which the corpus of the trust should now be paid to Margaret Callin and contends that the condition, directing that the corpus be paid over and the trust termi-

nated on the dissolution of the marriage between the beneficiary and her husband, is contrary to public policy, against public morals, and void. He has filed objections to the petition. The special guardian has further moved for an examination of the trustees, of Margaret Callin, and of Roger T. Cook, attorney and draftsman of the will. The examination proposed is " concerning the construction and determination of the validity, force and legal effect of the provisions of paragraph ' Fourth ' of the above decedent's Will and as to all matters affecting same and affecting the prayer of the petitioner's application herein " and further " all proceedings and papers leading up to and including a decree of divorce rendered by the District Court of the State of Colorado, County of Pueblo, in an action entitled ' Margaret D. Callin, Plaintiff, against Ralph C. Callin, defendant '."

Margaret Callin has appeared herein and moved to quash the notice of examination served by the special guardian, upon the grounds that " the examination sought herein is neither material nor necessary; that the examination is in effect a cross-examination in advance of trial; and on the further ground that there is no sanction in law to allow such examinations of such scope in actions of this character; that matters which such testimony is to cover are immaterial; and that the persons and papers whose testimony is to be taken and which are to be examined do not come within the class of persons and papers whose testimony may be taken by deposition or examined otherwise."

The motion to quash and the matter of construction are now before me. The beneficiary of the trust does not request the right to introduce evidence outside the terms of the will. I am of the opinion that there is nothing contained in the will before me which makes necessary or proper the examination sought by the special guardian, since the will by its terms contains no ambiguity and there appears to be no necessity to supply parol evidence to clarify its meaning. In effect, the testator said that his daughter shall have only the income from the trust " so long as her husband, Ralph Callin, shall live and continue as her husband." He further says, in effect, that " if Ralph Callin predeceases her, or if the marriage of said Margaret Callin and Ralph Callin shall be dissolved or terminated in any way except by the death of said Margaret Callin " then Margaret Callin receives the corpus outright. He then proceeds to give his reason for these provisions by stating in substance that while he has great personal regard

for the husband, the latter's ability to handle finances does not appeal to him and accordingly he wishes the husband to receive no part of the estate personally or on behalf of another. These statements need no clarification by evidence extrinsic to the will itself.

In *Brown* v. *Quintard* (177 N. Y. 75, 83) the court held: " Extraneous and parol evidence is admissible to explain a will where there is a latent ambiguity arising *dehors* the instrument, but never to supply, contradict, enlarge or vary the written words." A reading of the provisions of the will of Harris T. Dunbar leaves no latent ambiguity which necessitates extraneous or parol evidence to determine the clear intent of the testator.

For the aforesaid reasons, I grant the motion to vacate the notice of examination heretofore served by the special guardian.

I am required to construe paragraph "Fourth" of the will heretofore mentioned to determine whether the provisions therein are contrary to public policy and therefore void.

In effect, the testator by his will has said to his daughter, "While I have a great personal regard for your husband, I have no faith in his ability to handle finances; I am leaving you a trust fund of One hundred thousand dollars from which you will receive only the income so long as your husband lives and remains your spouse, but it he dies or your marriage is dissolved, then you will receive the sum of One hundred thousand dollars as your own."

The law is well established that conditions attached to a gift, the tendency of which is to induce the husband and wife to become divorced, are, upon grounds of public policy and public morals, void. (*Wright* v. *Mayer,* 47 App. Div. 604.)

The recent case of *Matter of Rothchild* (271 App. Div. 582) establishes the policy of this State with respect to the problem at hand. At pages 584-585 it was said:

" The point is well illustrated by the case upon which appellants place principal reliance (*Matter of Haight,* 51 App. Div. 310). There the income provided the son under the will was to be larger in case he ceased to be married to his wife. The court held that the condition attached to the gift, the evident purpose of which was to induce the son to secure a divorce, was void in contravention of good morals and public policy. The policy was quoted from *Wright* v. *Mayer* (47 App. Div. 604, 606), as follows:

" ' It is a general principal, well settled, that conditions annexed to a gift the *tendency* of which is to induce the husband

and wife to live separate, *or to be divorced,* are, upon grounds of public policy and public morals, void.' The italicization of ' tendency ' is from the Haight decision. Other language of the opinion also makes it clear that to offend the policy the provision of the will must be such that its ' manifest object ' is to induce a divorce and that the ' means employed are calculated to promote it.' In other words, an efficient means must accompany a manifest intent. Indeed, practically, it will be the means that will manifest the intent and it is certainly the means to which we must look to determine whether there is an inducement to divorce. As the alleged inducement is the important consideration, and operates on the mind of the legatee rather than on the mind of the testatrix, it is the likely effect of the provisions of the will on the person to be influenced which must be weighed rather than some personal purpose of the testatrix. Thus, courts have not found it necessary in any case called to our attention, involving the validity of a will on the question here presented, to look beyond the will itself."

The exact motive of the testator, Harris T. Dunbar, in reciting his opinions of Ralph Callin's personal attributes and business ability, is immaterial. It is the " means that will manifest the intent " (*Matter of Rothchild, supra,* p. 584). Such recital cannot alter the fact that the " means " are provided by the testator. Regardless of his purpose, he has placed a condition upon his daughter's legacy wherein she, by her sole decision, may make the choice of continuing as the wife of Ralph Callin, with the income only on $100,000, or, by divorcing him, to benefit by the receipt of $100,000 as a sum outright, to do with as she pleases.

The zeal of the testator to jealously protect the future care of his money so that Ralph Callin will have no contact, direct or indirect, with it may be considered commendable from the testator's point of view and should be recognized as far as possible under the law by the court, but the law is also solicitous of the rights of the children of Margaret Callin and Ralph Callin. The law says that the testator's restrictions, placed on the disposition of his property, may not be upheld where the natural result will be to deprive these children of their right to have a normal family life and a normal home with their father and mother. The law does not give a testator the right to bring about the destruction of a marriage even with one he considers an undesirable husband. No matter how commendable the testator's purpose may have been or how innocuous was his intent, the " means " was supplied by

the language of his will. His intentions may have been of the best; still his words provoke the opportunity and what his motive or purpose was is immaterial where the furnishing of the means is contrary to public policy. Where a contract is in violation of the principles of public policy, motive or intent, no matter what they may be, are immaterial.

In *Sampliner* v. *Motion Picture Patents Co.* (255 F. 242, 251–252) the court held:

" The question whether an agreement is void on the ground that it is contrary to public policy is to be determined by its general tendency. If that is opposed to the interests of the public, the agreement is void, even though in the particular case the intent of the parties may have been good and no injury to the public may have resulted. *Woodstock Iron Co.* v. *Richmond, etc., Extension Co.*, 129 U. S. 643, 9 Sup. Ct. 402, 32 L. Ed. 819; *Oscanyan* v. *Winchester Repeating Arms Co.*, 103 U. S. 261, 26 L. Ed. 539; *Meguire* v. *Corwine*, 101 U. S. 108, 25 L. Ed. 899. As was said by Chief Justice PRENTICE in *Connors* v. *Connolly*, 86 Conn. 641, 656, 86 Atl. 600, 605 (45 L. R. A. [N. S.] 564):

" ' It matters not that any particular contract is free from any taint of actual fraud, oppression, or corruption. The law looks to the general tendency of such contracts.'

" See Greenhood on Public Policy, p. 5; *Richardson* v. *Crandall*, 48 N. Y. 348. And Mr. Justice FIELD said in *Providence Tool Co.* v. *Norris*, 2 Wall. 45, 17 L. Ed. 868: ' The law looks to the general tendency of such agreements, and it closes the door to temptation, by refusing them recognition in any of the courts of the country.'

" It is enough that the contract belongs to a class which has a tendency contrary to the public good, although in the particular instance no injury results. *Palmbaum* v. *Magulsky*, 217 Mass. 306, 308, 104 N. E. 746, Ann. Cas. 1915D, 799."

This general rule of law has been followed in *Richardson* v. *Crandall* (48 N. Y. 348, 362) where the court held: " It matters not that the motives of the officer were good and humane if the acts are of such a character as tend, if countenanced, to oppression or a lax performance of official duty. In all cases where contracts are claimed to be void as against public policy, it matters not that any particular contract is free from any taint of actual fraud, oppression or corruption. The laws look to the general tendency of such contracts. The vice is in the very nature of the contract and it is condemned as belonging to a class which the law will not tolerate. (*Atchesen* v. *Mallen*, 43 N. Y. 147.)"

I am also impressed with the statements in *Gould* v. *Gould* (261 App. Div. 733, 735) where the court said: " The courts of this State have uniformly held that all agreements which are supported by a consideration or an inducement tending to encourage the severance of the marriage relationship are abhorrent to public policy and are, therefore, illegal and unenforcible. (*Schley* v. *Andrews*, 225 N. Y. 110; *McDonald* v. *McDonald*, 228 App. Div. 341; *Lake* v. *Lake*, 136 id. 47; *France* v. *France*, 79 id. 291; *Train* v. *Davidson*, 20 id. 577.) "

The court further stated, at page 735: " In *Lake* v. *Lake* (*supra*) the court used the following apposite language (at pp. 49 and 50): ' Recognizing the right of husband and wife living separate and apart from each other to contract under proper conditions for the proper support and maintenance of the latter, nevertheless no such contract can be sustained where, as in this case, no benefit is to be derived therefrom by the wife except in the event of the dissolution of the marriage. It is clear beyond question that the effect of this contract was to stimulate her energies in bringing about such a result. Only by her success in so doing could she receive any benefit under the contract. * * * The natural and necessary tendency of such a contract is the destruction of the marriage relation. It must, therefore, receive the disapproval of the courts.' "

Pursuant to the foregoing, I hold that portion of paragraph " Fourth " of the will of Harris T. Dunbar which provides, " or if the marriage of the said Margaret Callin and Ralph Callin should be dissolved or terminated in any way except by the death of the said Margaret Callin," is void. As to the balance of said paragraph " Fourth " the law, if possible, will separate any valid provisions of a trust from the invalid portions in order to carry out the general intent of the testator. (*Matter of Hitchcock*, 222 N. Y. 57; *Matter of Schwamm*, 53 N. Y. S. 2d 654, 656.) That Harris T. Dunbar intended his daughter to enjoy the income of the trust fund during the life of Ralph Callin is clear and it further appears that he intended to vest her with the corpus of the trust upon the death of the said Ralph Callin. It is only the inclusion in his will of that portion held invalid which offends the law of this State. As to the balance of the provisions of paragraph " Fourth " of his will the same are held valid and in full force and effect.

Enter a decree in conformity herewith.