In re ESTATE OF HATTIE GERBING, Deceased—(FRANK GERBING, JR., EX'T of the Will of Hattie Gerbing, Petitioner-Appellee, v. KATHERINE SIEBOLD GRIGG et al., Respondents-Appellees—(FRANK GERBING, JR., Respondent-Appellant.))

(No. 59020;

First District (2nd Division)—September 17, 1974.

Rehearing denied October 21, 1974.

Sidley & Austin, of Chicago (Alice M. Bright, George A. Platz, and James J. Carroll, of counsel), for respondent-appellant.

James H. Canel and Ira D. Schultz, both of Chicago (Canel & Canel, of counsel), for respondents-appellees.

Mr. JUSTICE DOWNING delivered the opinion of the court:

Frank Gerbing, Jr., as the executor of the will of Hattie Gerbing,

(hereinafter petitioner), filed a petition in the court below for instructions seeking a determination of whether a provision of the will violated public policy and was therefore void. He joined as respondents Katherine Siebold Grigg (a half sister of decedent), Robert Grigg (son of Katherine Siebold Grigg), and Robert Grigg's children, Scott, William, Daniel, Nancy, and Linda, all the respondents (hereinafter respondents) being apparent alternative contingent beneficiaries of the trust corpus whose interest would be affected by the allegedly void provision of the will. The probate court entered an order declaring that the trust created under the will was valid. Petitioner then filed motions to vacate that order both in his individual capacity as primary beneficiary of the trust and in his capacity as executor, both of which were denied by the probate court. Petitioner, in his individual capacity as a respondent, now prosecutes this appeal from those orders.

This appeal presents the following issues for review: (1) whether petitioner is estopped from asserting the invalidity of the trust; (2) whether the conditions pertaining to the termination of the petitioner's and his wife's marriage are contrary to public policy and void; and (3) should the conditions be found void, what effect will such determination have upon the trust created under the will.

Article IV of decedent's will provides, in part, as follows:

"I give, devise and bequeath all the rest, residue and remainder of my estate, real, personal and mixed, of whatsoever character and wheresoever situate (referred to below as the "trust property") of which I may be seized or possessed and to which I may be entitled at the time of my decease, but expressly excluding any property over which I now or hereafter may have power of appointment, to THE NORTHERN TRUST COMPANY, of Chicago, Illinois, as trustee, subject to the following terms and conditions:

4.1 Commencing at my death and during the life of my son, FRANK GERBING, JR., the trustee shall pay to him the entire net income from the trust property.

4.2 In addition to income, the trustee also shall pay to my son, FRANK GERBING, JR., such amounts from the principal of the trust property as he from time to time may direct by writing filed with the trustee, except that (a) the aggregate payments to him pursuant to this paragraph in the calendar year in which my death occurs or in either of the next two succeeding calendar years shall not exceed the sum of Ten Thousand Dollars ($10,-000.00) and (b) the aggregate payments to him pursuant to this paragraph in any calendar year subsequent to the calendar years

mentioned above shall not exceed the sum of Ten Thousand Dollars ($10,000) or an amount equal to five (5) percent of the value of the principal of the trust property determined as of the time such a written direction for a given payment is filed with the trustee, whichever is larger. I am aware of the fact that the aggregate amount which my said son may be entitled to withdraw pursuant to this paragraph in a given calendar year may vary as distributions of principal of the trust property to him take place pursuant to this paragraph or the following paragraph and as the assets included in the principal of the trust property changed in value. The rights to withdraw principal of the trust property during any given calendar year bestowed upon my said son by this paragraph shall lapse at the end of such year.

4.3 In addition to the payments mentioned above, the trustee from time to time may pay to my son, FRANK GERBING, JR., such amounts from the principal of the trust property as the trustee considers necessary or desirable for his comfortable maintenance, medical care, best interests and welfare, including reasonable luxuries, taking into consideration the income and cash resources known to the trustee to be available to him for such purposes from other sources.

4.4 In the event my said son's wife, ARLIE GERBING predeceases my son, FRANK GERBING, JR., *or in the event ARLIE GERBING and FRANK GERBING, JR. are divorced and remain divorced for a period of two (2) years,* then *in either event* this trust shall terminate and my trustee is directed to pay, turn over and deliver the remaining principal of the trust property and all accrued dividends or interest accumulated thereon to my said son. In the event my son, FRANK GERBING, JR., predeceases his wife, ARLIE GERBING, then I direct my trustee to deliver the remaining principal of the trust property together with all accrued or undistributed net income therefrom to my sister, KATHERINE SIEBOLD GRIGG, if she survives my said son. If my said sister predeceases my son, FRANK GERBING, JR., then upon the death of my said son, I direct my trustee to deliver the remaining principal of the trust property and all accrued or undistributed net income therefrom to ROBERT GRIGG, if living, or if ROBERT GRIGG is not living at that time, to his children living at the date of the death of FRANK GERBING, JR., share and share alike." (Emphasis supplied.)

Petitioner is the only child of Hattie Gerbing and her sole heir at law. He has been married to Arlie Gerbing for 34 years and was married to

her both at the time decedent executed her will and at the time of decedent's death.

## I.

Pursuant to a provision in the challenged article of the will, the probate court ordered the trustee to distribute the sum of $10,000 to petitioner. Respondents now maintain that, since petitioner has accepted benefits under the will, he has confirmed and ratified every other part of the will and cannot now assert an invalidity of the trust and will of the decedent.

■■ While it is true that one's voluntary acceptance of a benefit conferred by a will precludes an attack by him upon other lawful provisions of the will, this general rule is qualified to the extent that, even though one accepts a benefit under the will, he is not precluded from questioning the validity of any provisions that are contrary to the law or public policy (*Chaney v. Baker* (1922), 302 Ill. 481, 484, 135 N.E. 14). Thus, in *Schuknecht v. Schultz* (1904), 212 Ill. 43, 72 N.E. 37, appellant, who had taken a beneficial interest under the will, was permitted to attack certain clauses of the will as violative of the rule against perpetuities. The cases cited by respondents in support of their position do not involve any claim that a provision in the will being attacked was illegal or against public policy and are, for this reason, inapposite.

■■ In the case at bar petitioner's theory of the case—that the provisions of the trust represent a scheme to induce him to divorce his wife and therefore violate public policy permits him to attack those provisions of the will. It is also significant to note that the probate court's order which directed the funding of the trust and permitted $10,000 distribution, also specifically provided "* * * that the distribution is made without prejudice to the right of Frank Gerbing, Jr., to seek a ruling from the court concerning the validity of the trust."

Respondents contend that, by filing in his individual capacity a motion to vacate the court's order declaring the trust valid, petitioner has abandoned his position as executor and violated the obligations imposed on him by that office since, as executor, he was bound to follow the dictates of the court's order; and that he has further violated his executor's duties by prosecuting this appeal without having first removed himself as executor. Respondents have cited no authority to support their position.[1] The record does not indicate any petition filed in the court below by the respondent to remove the petitioner as executor. Likewise

---

[1] Exchange National Bank of Chicago, as trustee under the will, in its statement in lieu of brief filed in its capacity as successor trustee, adopts respondents' position but, likewise, fails to cite any authority.

there is nothing in the record to indicate that the court below ever ruled on this specific point.

Section 276 of the Probate Act (Ill. Rev. Stat. 1971, ch. 3, par. 276) sets forth the statutory basis for the removal of an executor. In 1965 the legislature added the following subsections:

> "(9)  becomes incapable of or unsuitable for the discharge of his duties; or
>
> (10)  there is other good cause."

In the case of *In re Estate of Phillips* (2nd Dist. 1972), 3 Ill.App.3d 1085, 280 N.E.2d 43, the court considered a situation in which the administrator of a decedent's estate was also the officer of a corporation founded by the decedent and indebted to the decedent; the issue was whether the administrator's failure to collect debts due the estate from the corporation on grounds that the corporation needed money more than did the estate constituted a conflict of interest. The court held that under section 276 of the Probate Act an administrator will be removed, and a special administrator appointed, where there is a conflict of interest between the estate and the personal interest of the administrator or between the positions held by the executor or administrator. The court further stated that an administrator or executor may be removed only for reasons set forth in said section 276.

In *In re Estate of Kuhn* (2nd Dist. 1967), 87 Ill.App.2d 411, 231 N.E. 2d 97, the court affirmed the denial of the petition for the removal of an executor. In noting that an executor should be removed only for the reasons set forth in section 276, the court also stated:

> "[T]hat where an executor's personal interests are so conflicting with and adverse to the interests of the estate that both such interests cannot be fairly represented by the same person, he may be removed as such executor. We disagree with the petitioners' conclusion that the factual situation here warrants such action; and that the effect of the petitioners' will contest action is to place the executor in a position where her personal interests are so conflicting with and adverse to her interests and duties as executor that she cannot fairly carry out her obligations as executor." 87 Ill.App.2d at 422.

In the case of *In re Estate of Benson* (2nd Dist. 1969), 111 Ill.App.2d 251, 250 N.E.2d 281, the court affirmed the lower court's appointment, upon petition, of an administrator to defend the estate regarding certain counterclaims. In *Benson* the executor of the estate of the decedent was also the attorney for certain claimants who sought to reach the assets of the estate.

We think that there was a conflict of interest involved such that the

460

petitioner-executor should have been replaced by a special administrator to defend the will. In his petition for instructions, petitioner is not only in the anomalous position of suing himself as one of the respondents, but in both capacities he is suggesting that a material provision of the will is void for violation of public policy. Even if we assume that he had a right as petitioner-executor to suggest the voidness of the provision as violative by public policy, it would still be the fact that no one involved in the litigation is representing the interest of the estate as such; the other respondents are representing their private interests as contingent beneficiaries under the will. The same situation prevails on this appeal: No one is representing the interest of the estate as such.

■■ We think, however, that this issue cannot be raised on this appeal for the first time, because the record does not disclose any effort by respondents to procure the appointment of a special administrator in the court below; as a result, the court below was never given an opportunity to rule on the matter. More significantly, respondents have not demonstrated any prejudice to their private interests arising from what is in effect the non-representation of the estate in this litigation.[2]

II.

Turning to the question of the validity of the conditions (see the underscored portions of 4.4 on page 3, *supra*) imposed in the trust created by the testatrix in Article IV of her will, the law in Illinois, as well as in many other jurisdictions, is well-established that "* * * conditions annexed to a gift, the tendency of which is to encourage divorce or bring about a separation of husband and wife are against public policy and void." *Winterland v. Winterland* (1945), 389 Ill. 384, 386, 59 N.E.2d 661. See also *Ransdell v. Boston* (1898), 172 Ill. 439, 50 N.E. 111; *Tripp v. Payne* (1930), 339 Ill. 178, 171 N.E. 131; *Fleishman v. Bregal* (1938), 174 Md. 87, 197 A. 593; *Hawke v. Euyart* (1890), 30 Neb. 149, 46 N.W. 422; *In re Onora's Will* (1954), 205 misc. 531, 130 N.Y.S.2d 480; *Graves v. First National Bank* (N.D. 1965), 138 N.W.2d 584; *Fineman v. Central National Bank* (Ohio App. 1961), 18 Ohio Op. 2d 33, 175 N.E.2d 837.

In the case at bar the testatrix provided that, if her son was alive at her death, such personalty as jewelry, clothing, household furniture and effects of all kinds were bequeathed to petitioner; two specific bequests of $5,000 each were provided for the Bethany Methodist Home and a niece, and the residue of her estate is to be disposed of through the

---

[2] It should be noted that we are not holding that an executor who seeks instructions from a probate court has no right to appeal from the instructions which he thereupon receives. That issue might have been involved, had this appeal been taken by petitioner-executor in his capacity as executor.

means of the trust. As set forth earlier, petitioner is the primary beneficiary of that trust, the terms of which call for the distribution of the income from the trust property to petitioner during his lifetime with a limited power in petitioner to invade the corpus of the trust annually and a discretionary power in the trustee to pay to him additional limited amounts from the principal of the trust property. The terms further provide that the remaining trust principal is to be delivered to petitioner "In the event my said son's wife, ARLIE GERBING, predeceases my son, FRANK GERBING, JR., or in the event ARLIE GERBING and FRANK GERBING, JR. are divorced and remain divorced for a period of two (2) years." Should petitioner predecease his wife, the trust principal is to pass to the named contingent beneficiaries.

Petitioner contends that this trust created by the testatrix had for its sole object the furtherance of her scheme to separate her son from his wife and thus is contrary to public policy and void.

There appear to be only three reported cases in Illinois that interpret and determine the effect to be given to testamentary provisions of this nature. In *Ransdell v. Boston, supra,* the testator provided that his son should have the occupancy, use, rents, and profits of certain land for life or until the dissolution of his son's marriage at which time the land was to be conveyed to him in fee. The testator further provided that, should his son die without issue and without dissolution of the marital relationship, the land should pass to other named beneficiaries. The son there presented the same argument as does petitioner in the instant case. Recognizing the appellant's position, the supreme court, quoting from Judge Story (1 Story's Eq. Jur. sec. 291a), stated:

> " 'The question as to what conditions affecting marriage are valid must depend upon the circumstances of each particular case, and will be very materially affected by the consideration how far the condition was one fairly applicable to the relation of the parties and the peculiar views and situation of the donor and donee.' " ( 172 Ill. at 445.)

The court then noted that in *Ransdell* the testator's son and his wife had been separated for two years prior to the execution of the will and that a divorce suit between them on cross-complaints for divorce had been pending for more than two years. Observing that the condition certainly could not have tended to encourage either the separation or the divorce suit since both took place long before the execution of the will, the court held the provision to be valid stating that the testator "* * * did not disinherit his son upon condition that he should live with his wife or should obtain a divorce from her. He simply made one

provision for him in case they were not divorced, and another if they were." (172 Ill. at 446.) Since in *Ransdell* the court based its holding on the fact that the son and his wife had already been separated and had filed for divorce before the execution of the will, it is readily distinguishable from the factual situation now presented and the court's conclusion there does not bind this court.

In *Tripp v. Payne, supra*, the testatrix placed all of her property in trust and provided that the residue of the income should be accumulated for 21 years and then be paid to her son provided that his wife should die within that time or that he should cease to live with her. Appellee argued that this proviso was contrary to Illinois law and against public policy in that it attempted to induce a divorce between him and his wife. Reviewing the public policy of this state with regard to marriage and divorce, the supreme court held:

> "[I]t is the public policy of this State to safeguard and protect the marriage relation. Indeed, that relation is the foundation stone of modern society in civilized countries, and we think sound public policy dictates that the relation should not be allowed to be interfered with. Nor does the fact that our laws recognize and make provision for divorce militate against this conclusion. * * * The effect of the laws relating to divorce is merely that when one has been wronged by his or her spouse in a manner provided by the statute, such injured party may have the marriage dissolved. But that does not indicate any public policy to encourage divorce."
> (339 Ill. at 182.)

The court distinguished the holding of the *Ransdell* case for the reason that, in *Tripp*, appellee and his wife had neither separated nor contemplated separation. In conclusion the court held that it could draw but one reasonable inference from the language of the testatrix, *i.e.*: "Since the provision would tend to induce a separation it is clearly contrary to the public policy of this State and is void." 339 Ill. at 183.

Finally, in *Winterland v. Winterland, supra*, the testator first provided a life estate for his widow until her death or remarriage. On the happening of either event, the estate was to be divided evenly among his 11 children. By a codicil he provided that the share of his son George was to be held in trust and the income paid to him until his present wife died or was separated from him by absolute divorce. If either event occurred during George's lifetime, the trust was to cease and the corpus was to be paid to George. If neither event so occurred, the principal was to be paid to testator's other children and the descendants of any other children then deceased who were living at George's death. The testator died in 1928 and his widow in 1935. George accepted the income of the

trust and made no effort to challenge the validity of its provisions, dying on June 7, 1940, having continuously resided with his wife until his death. After George's death his wife and son filed suit seeking to have the codicil declared null and void and to compel the trustee to pay George's fund to them.

Recognizing the general prohibition of conditions annexed to gifts, the purpose of which is to encourage divorce, the supreme court, citing *Ransdell* and *Tripp*, noted that the conditions in question must be analyzed in light of the particular circumstances of each case. The court then stated that any attempt to distinguish the *Tripp* case on the ground that, in the case before it, the testator withheld only part of his bounty from his son pending his divorce, while in *Tripp* the testatrix's son received nothing so long as he continued to live with his wife, was inappropriate:

> "In both cases the donee was to receive the benefit of a gift upon becoming separated or divorced; and we must conclude that there is no difference in principle or effect whether all or a part of the testator's bounty is withheld because of failure of the condition." (389 Ill. at 387.)

Noting the public policy of this state to safeguard and protect the marriage relationship, the court concluded that:

> "The natural tendency of the provision of the testator's codicil giving to his son George the *corpus* of the trust estate upon his becoming divorced from his wife is to encourage divorce, and for that reason it is void, notwithstanding they continued undivorced and living together until the date of his death." 389 Ill. at 387-88.

■■ Based upon the long-established public policy as stated in *Winterland*, the divorce condition annexed to petitioner's receipt of the remaining principal of the trust corpus is void as against the public policy of this state. Here the provisions of the trust gave petitioner a life estate in the income from the principal of the trust funds but permitted the remaining principal to vest in him only upon the cessation of his present marriage relationship or upon his wife predeceasing him. There is nothing in the record before us to suggest that at the time of the will's execution petitioner and his wife were not happily married. Further, it is significant to note that "* * * the vice of the condition is that it tends to and might operate on the recipient's mind to influence the procurement of a divorce by him in order to obtain his bequest outright." (*In re Agnew's Estate* (1957), 11 misc. 2d 1006, 174 N.Y.S.2d 1008, 1011. See *Matter of Rothchild's Will* (1946), 271 App. Div. 582, 66 N.Y.S.2d 573.) Thus, considering the provisions of the testatrix's will in light of public policy and the circumstances of this particular situation,

it is apparent that the testatrix's trustee condition tended to effect the separation of her son from his wife.

We reaffirm today the long established public policy to safeguard and protect the marriage relationship, and based on the record before us, hold invalid the following language of Article 4.4: "* * * or in the event ARLIE GERBING and FRANK GERBING, JR. are divorced and remain divorced for a period of two (2) years, * * * in either event * * *."

## III.

We next consider the effect our holding will have on the remaining provisions of Article IV. Petitioner urges that the invalid provision requires invalidating the entire article, for to do otherwise would permit the testatrix to accomplish her unlawful scheme by indirection. On the other hand respondents suggested—in case the court reaffirmed the public policy—that only the inoperative or unenforceable conditions be stricken.

The real question is whether the offensive language in Article 4.4 is separable and, if so, is the remaining language valid.

Or to say it another way: if it is shown that the testatrix was through the testamentary trust primarily seeking the divorce termination of the marriage, then both the alternative divorce and the alternative death conditions precedent are void (as is thereby the trust itself), and this is so whether the said alternative conditions precedent condition *both* the income and the corpus interest under the trust or *only* the corpus interest. On the other hand, if the testatrix is not shown to have been primarily seeking the divorce termination, then the alternative condition precedent will be divisible, and only the divorce condition precedent is void.

■■ In this case, neither the wording of the trust provision nor the "four corners" of the will indicates the testatrix's primary intent, and no parol evidence was offered on that point. Absent, therefore, any showing that the testatrix's primary intent was to seek the divorce termination of the marriage, we hold that the alternative condition precedent relating to the death termination of the marriage is divisible and itself valid.[3]

Petitioner suggests that based on the *Tripp v. Payne* case, and the weight of authority in other jurisdictions, the entire Article IV is void.

In *Tripp v. Payne* the supreme court held (in 1930) the entire provision

---

[3] We note that the fact that the alternative conditions precedent are attached to the corpus interest only (so that the beneficiary has the unconditional life interest and in this case also had a limited power to invade corpus with an additional discretionary power in the trustee to invade corpus in favor of the beneficiary) diminishes significantly the motivation offered to the beneficiary to divorce his spouse.

void without distinguishing that portion which conditioned the son's receipt of the bequest upon the death of his wife from the portion which conditioned the bequest upon the son's separation from his wife.

On the contrary, in *Winterland v. Winterland* the supreme court (in 1945) determined that the vesting of the estate in George Winterland upon his survival of the death of his wife was a lawful contingency since "It is a common provision in wills that a devise or bequest shall vest in certain beneficiaries upon the death of a person named." (389 Ill. at 388.) Deciding then that the testator had set out two separate and independent conditions precedent (one valid, the other invalid), the court concluded that the valid condition had become impossible of fulfillment upon George's death during his wife's lifetime, and the alternative contingent remainder created by the codicil vested in the named contingent beneficiaries. Cognizant of this conflict, the court in *Winterland* briefly stated:

> "It is insisted by appellee that a contrary doctrine has been announced by this court in the case of *Tripp v. Payne*, 339 Ill. 178. It is apparent from a reading of the opinion in that case that the questions which we have discussed and upon which we are basing our decision here were not presented to and evidently not considered by the court in its decision." 389 Ill. at 389.

Mr. Justice Gunn wrote a dissenting opinion in *Winterland* in which Mr. Justice Stone and Mr. Justice Wilson both concurred. He there maintained that the legal and the illegal provisions were so closely connected, "* * * both in grammatical form as well as in thought and implication" as to render the entire codicil void as contrary to public policy. 389 Ill. at 389.

The opinions of the courts of the State of New York evidence the adoption of a public policy reflecting our own prohibition of conditions annexed to gifts that encourage disruption of the marriage relationship. (*In re Agnew's Estate, supra; In re Blind's Will* (1954), 138 N.Y.S.2d 210; *In re Onora's Will, supra; Cruger v. Phelps* (1897), 21 Misc. 252, 47 N.Y.S. 61.) Likewise, the New York courts have held, as Mr. Justice Gunn suggested, that, since a provision conditioning a gift upon dissolution of a marriage is void, the provision creating the trust is also ineffective (*In re Agnew's Estate, supra*). Holding that, in such a case, the beneficiary takes the gift as if there had been no condition, the court in *In re Agnew's Estate* explained its conclusion by quoting from an opinion of the New York Court of Appeals:

> "* * * To give the rule less force; to declare the condition void without at the same time giving effect to the gift made upon the void condition, would be a mockery of the beneficiary and by indirection would permit a testator to accomplish a result which

we hold contrary to the "common weal." * * *"." 174 N.Y.S.2d at 1011.

Yet despite that line of New York cases, the case of *In re Dunbar's Will* (1947), 189 Misc. 687, 71 N.Y. S.2d 287, supports the validity of the alternative condition precedent of a death termination of the marriage where alternative conditions precedent similar to those in the instant case were attached to the corpus interest only. In that case, a close study of the wording of the trust provision itself indicates that the divorce condition precedent, though itself void, may have been intended to protect the life beneficiary in the event that her husband, Ralph, divorced her, so that the wording of the divorce termination alternative condition precedent does not indicate that the testatrix's primary intent was to seek to induce the life beneficiary to divorce her husband.

Article 4.4 provides that the trust shall terminate upon the happening of either of two contingencies, *viz.*, the petitioner's survival of the death of his wife or his becoming divorced from his wife and remaining divorced for a period of 2 years. We hold the latter contingency to be invalid, but no one has suggested that the former contingency is invalid *per se.* We believe that a testator has a legal right to direct that a trust of this type may terminate upon the death of a person, even though that person may be the wife of the testator's son. For the reasons expressed herein, we believe the two contingencies are separable—by deleting the underscored words from Article 4.4—and the remaining language constitute a valid and enforceable provision. See Bogert, Trusts and Trustees, at 433-34 (2d ed.); *Winterland v. Winterland, supra,* at 388.

Thus we give effect to the intention of the testator, as determined from the entire will, except as to that language which is contrary to the law. See *Wiener v. Severson* (1957), 11 Ill.2d 347, 349, 143 N.E.2d 225.

## IV.

Lastly, we shall dispose of an issue not raised by respondents until their oral argument before this court when they there urged, for the first time, that the cause be remanded to the probate court in order to ascertain the circumstances which prompted the testatrix to provide for the distribution of the entire trust corpus to appellant upon the termination of his marriage to Arlie Gerbing.

Our search of the record reveals that respondents made no such request of the probate court. The pleadings before the court at the time it ruled Article IV valid included petitioner's petition for instructions and respondents' reply. In the former, petitioner requested that the court instruct him as to the validity of the trust, alleging his belief that it might be contrary to public policy and void as an inducement to obtain a di-

vorce. Respondents responded with their denial of this allegation stating that "* * * *by law* the conditions precedent set forth in Paragraph 4.4 * * * are valid and enforceable."

■■ Thus, it is apparent that the only theory argued by the respondents in the lower court was that the trust provisions were valid as a matter of law. Having failed to request a factual inquiry in the probate court, respondents are precluded from doing so for the first time on appeal. *Woman's Athletic Club v. Hulman* (1964), 31 Ill.2d 449, 454, 202 N.E. 2d 528; *Exchange National Bank v. Behrel* (1972), 9 Ill.App.3d 338, 341, 292 N.E.2d 164.

For the reasons set out herein the orders of the circuit court of Cook County dated February 8, 1973, and March 19, 1973, insofar as they conflict with this opinion are hereby reversed and the cause is remanded for such proceedings as are consistent with the views expressed herein.

Reversed and remanded.

HAYES, P. J., and STAMOS, J., concur.